**TEXAS & N. O. R. CO. v. HANEY.**

No. 3981.

Court of Civil Appeals of Texas. El Paso.

Oct. 3, 1940.

On Rehearing Nov. 14, 1940.

Montgomery & Taylor, of Edinburg, and McDaniel & Catlett, of McAllen, for appellant.

Kennedy Smith, of Raymondville, Sawnie B. Smith, of Edinburg, and E. B. Ward, of Corpus Christi, for appellee.

WALTHALL, Justice.

This is a personal injury suit. On December 3, 1933, while appellee, Conrad Haney, was riding in a truck with a trailer, driven by Vollie Adair, the truck came in collision with a freight train of the Texas & New Orleans Railroad Company at a railroad crossing with a public highway, near the town of Edinburg, Hidalgo County, Texas, and in which collision Conrad Haney received the injuries for which he sues.

The injuries sustained by Haney, as alleged, are that his left leg and the flesh, bones, muscles and ligaments thereof, were crushed, torn and broken to such extent that it was necessary to amputate his left

leg at or about the knee joint; that thereafter it was necessary again to amputate the left leg six inches above the knee joint; that in the collision he sustained injuries to his head, scalp, skin and bones of his head, and that as a result of said injuries he is permanently injured and made a cripple for life.

The evidence shows that at the time of his injuries plaintiff was healthy and strong, and was earning seventy dollars per month; he alleges that as a result of his said injuries his earning capacity has been diminished, if not destroyed. He alleged that by reason of his injuries he suffered and still suffers physical and mental pain and will continue to do so; that because of his injuries he incurred hospital, medical and nurses' expenses and doctors' bills, which he itemizes, and which aggregate $2,358.25.

Plaintiff alleges as a proximate cause of his injuries each of the following grounds of negligence, and each of which the court submitted to the jury, substantially as alleged, in special charges, namely: operating the train at an excessive rate of speed at the time it approached the highway crossing in controversy; failure to blow the whistle sufficiently to give warning to the traveling public of the approach of the locomotive to the highway crossing; failure to ring the bell continuously during the time the locomotive was approaching from a distance of 1,200 feet and passing the highway crossing; that the railroad train as it approached the highway crossing on the occasion in controversy was not under control of the operators thereof; failure to have at the crossing of the highway in question an adequate signaling device sufficient to give warning to the traveling public generally who might then have been approaching said crossing with ordinary care in motor vehicles; failure to have a human flagman at the crossing in question on the occasion in controversy to give warning of the approach of the train at said crossing to the traveling public generally who might then have been approaching said crossing with ordinary care in motor vehicles; discovered peril of plaintiff and failure of the fireman to use such means at his command to prevent injuring plaintiff; the collision was an unavoidable accident; was the train driven at a speed such that it could not be brought to a stop in the distance within which the occupants thereof could see and distinguish objects within the range of the headlights on said motor vehicle.

The jury found all issues of negligence assigned and submitted in favor of the plaintiff, and that each was a proximate cause of the injuries plaintiff sustained.

The court submitted and the jury found all issues of contributory negligence in favor of plaintiff.

The jury found that plaintiff sustained damages by reason of his injuries and assessed his damages at $32,359.25.

The court received the verdict and entered judgment in accordance therewith, that is, entered judgment for $30,000, the remaining unpaid amount of the verdict.

On defendant's motion for a new trial, which embraced grounds of alleged misconduct of the jury, the court made findings of fact to the effect that the foreman read to the jury the charge of the court, then propounded to the jury the following questions: "Whose fault was the accident?" or "Who was most to blame for the accident?" or "Is Conrad Haney entitled to some consideration?" and that all of the jurors indicated either that they thought the railroad was at fault for the accident, was more to blame for the accident, or that Conrad Haney was entitled to some consideration, according to the question propounded. The court found that the foreman then read again each issue and that as each issue was reached the jury agreed upon the answer thereto, but that the answers were not, on said reading, written down. The court found that then the foreman for the third time read over each issue to the jury and that on said reading, as each issue was reached, the jury's answer thereto was written down according to the way they agreed to answer the same at the second reading of the issues. The court found that on the third reading there was inserted, in answer to issue No. 7, the amount of the damages found by the jury. The court found that the amount of the damages was arrived at substantially in the following manner: the jury first voted on whether or not they would find $40,000 as the amount of the damages. Only about three of the jurors voted this amount. The court found that the jury then voted on $35,000 as the amount of the damages and that only five or six of the jurors voted for said amount. The court found that then the jury voted upon $30,000, in addition to hospital, medical and doctors' expenses, as the amount of the damages, and that the jury agreed upon $30,000 in addition to the $2,359.25 doc-

tors', hospital, etc., expenses, as the damages, and thereupon wrote down $32,359.25 as the amount of the damages. The court made other findings which we think immaterial, but found that no such misconduct of the jury was shown as would warrant setting aside the verdict, and overruled the motion.

## Opinion

Appellant assigns error in overruling its motion for a new trial for the reason that the amount of $30,000 assessed as damages by the jury was so exorbitant that when coupled with the misconduct of the jury in first deciding the questions stated by the court in passing upon appellant's motion for a new trial, and stated above, before specifically answering the questions submitted to them, as found by the court, and further coupled with the fact that the answer of the jury with reference to the failure to blow the whistle, ring the bell, have the train under control, adequate signaling device, a human flagman at the crossing, and questions of discovered peril, were so contrary to the preponderance and weight of the evidence, the same show such extreme passion and prejudice against defendant on the part of the jury that it could not be considered by reasonable minds that defendant had received a fair trial.

The trial court heard the evidence in considering the motion for a new trial and found that there was no misconduct on the part of the jury in the matter charged in the motion. We think the evidence sustains the court's finding as to misconduct of the jury.

We think, however, the jury's findings on the issues of negligence and proximate cause referred to in the assignment are not sustained by the evidence. The evidence shows, we think, by several disinterested witnesses and the train crew that the train whistle was blown, the bell was rung, no evidence to show the train was not under control. The evidence shows adequate signaling device; the evidence does not show the necessity for a human flagman at that highway crossing, nor is the evidence sufficient to show discovered peril. The only evidence in the record to show that the whistle was not blown and the bell was not rung was that plaintiff did not hear either, plaintiff did not see the wig-wag or wigwag posts; the evidence, by photograph and otherwise, shows that both were there. The evidence shows the accident occurred very early in the morning of December 3rd, when it was yet dark, and there was a heavy fog.

The court submitted the issue of excessive speed at which the train approached the highway crossing. The court in the charge to the jury gave no standard of comparison or criterion for the jury to go by in deciding the issue, nor was any requested. The jury found the issue in appellee's favor. We think we cannot say, in view of all the evidence in the case, the jury's finding on the issue of excessive speed was wholly speculative.

We have carefully considered the entire record of more than three hundred pages of evidence and have concluded that the only real issue in the case is the question of the amount of the verdict. Is it excessive? We have concluded that we should not set the judgment aside and grant a new trial on any of the issues presented. We have concluded that the verdict is excessive.

If the appellee will enter a remittitur of $10,000 within twenty-five days from the date of filing this opinion the case will be affirmed; if no remittitur is made, the judgment will be set aside and a new trial granted.

We have considered the assignments not specifically discussed, and they are each overruled.

PRICE, Chief Justice (concurring).

While I concur with Justice WALTHALL in the disposition of this case, not being entirely in accord with some of the holdings in his opinion, I deem it not inappropriate to state my grounds for concurrence.

While of no special significance, it might be stated that this is the second appeal of this case. By transfer from the San Antonio Court it was before the Beaumont Court. Haney v. Texas & N. O. Ry. Co., Tex.Civ.App., 119 S.W.2d 714. A judgment in favor of defendant was reversed on the ground of conflict in the findings as to contributory negligence.

In this case appellant contends, among other things, that the verdict of the jury upon which the judgment is founded was arrived at through passion and prejudice. If this appears from the record, the judgment should not stand.

680

Passion and prejudice are sought to be deduced from, first, the alleged misconduct of the jury; second,. from the amount of damages found; third, it is charged that certain findings in the verdict are entirely against the weight of the evidence, against the overwhelming preponderance thereof, and that this established passion and prejudice; . fourth, that the three matters before enumerated, taken together, establish passion and prejudice.

The issue of misconduct was found by the trial court against the contention of appellant. Findings of the trial court as to same are not attacked. It was certainly harmless in itself for the jury to decide and discuss "who was to blame for the accident," and that "plaintiff was entitled to some consideration." If this discussion was susceptible of the construction made by the trial court that the plaintiff was entitled to damages, it may create a suspicion that the jury, in answering the question, might have sought to frame their answers so as to bring about a result, but does not establish the fact. The findings negative this fact, and we think there is a support in the evidence therefor.

As to the question of damages, the amount found is large, and we think too large. In a personal injury case the question of damages nearly always is a question of opinion. There is no criterion laid down by the law for the valuation of mental suffering and physical pain. Compensation is the end sought. Opinions of men and bodies of men will always differ thereon. For these elements the amount that may be assessed is not unlimited. Unless the amount is so large as to shock the conscience, a jury is not to be convicted of passion and prejudice simply because the damages are too large. Articles 1861, 1862, R.S.1925, were in part, no doubt, passed to prevent new trials where the only error was in the award of excessive damages.

The assessed damages are large, the injury was grievous; plaintiff, a youth of eighteen, lost his leg above the knee, two amputations were necessary; the pain and suffering were intense and prolonged; almost of necessity his capacity for earning has been materially decreased throughout the rest of his life; his earnings at the time were seventy dollars a month; he was strong and healthy and had a life expectancy of 43.5 years. The expenses reasonably accruing on account of his injuries amounted to $2,358.25. This amount is not included in the judgment, although found by the jury. It may have been same was paid by defendant before the trial. The assessment of $32,359.25 as damages, in view of the facts, we do not believe is any evidence of passion and prejudice on the part of the jury.

Complaint is made of the finding of the jury as to the sounding of the whistle in approaching the crossing. The issue was not submitted under the statutory duty as to the blowing of the whistle on approaching the crossing. The issue submitted was: "Do you find from a preponderance of the evidence that the whistle on defendant railroad company's locomotive at the time said locomotive was approaching the highway crossing on the occasion in controversy was not blown sufficiently to give warning of the approach of said locomotive to said crossing to the traveling public generally who might then have been approaching said crossing with ordinary care along said highway in motor vehicles?" This was found in favor of the plaintiff, as were the related issues of negligence and proximate cause. An entire failure to blow the whistle is not found, but that the whistle was not sufficiently blown. Here, again, we have a matter as to which the minds of men may reasonably disagree. The evidence is that there was a heavy fog, visibility was low, and the train was about to proceed to a much-used crossing at a rate of speed of 30 miles per hour. Concede the truthfulness of all of the witnesses, and it may have been that the whistle was not sufficiently blown to give warning to travelers on the highway. The situation was unusual, and ordinary care might have required unusual precaution in this respect. The engineer realized this, and said he blew the whistle at a point beyond the regular whistling post. The dense fog and surrounding conditions might have called for the almost continuous sounding of the whistle. It is thought that this finding does not evidence passion or prejudice on the part of the jury.

In substance it was found that the bell was not run continuously from a distance of 1,200 feet from the crossing until same was passed. Plaintiff and the driver of the truck testified when they approached the crossing before the collision neither heard the bell. From appellant's statement under the assignment it is not clear just how far, under the evidence, the bell started ringing from the crossing. Miss Eikenberry testi-

fied she heard the bell as the train approached the crossing, but how far the train was from the crossing at such time does not appear. The same is true of the testimony of the witness J. E. Webb. The engineer does not fix definitely the distance from the crossing the automatic bell started ringing. Fireman Moser testified he started the bell at the Edinburg station. The testimony of plaintiff and the driver of the truck was admitted that they were in a position to hear the bell, and did not hear same, and is some evidence that the bell was not rung. Another question is presented, however, and that is, is the probative effect of this testimony destroyed by the positive testimony that the bell was ringing? There is some confusion and disagreement as to this in our decisions. Here, this question need not be determined, for we are considering only as to whether or not the findings of the jury were influenced by passion and prejudice. If the legal effect of the positive testimony be as contended by the appellant, the jury were not so charged—no guidance was given them in the matter. The negative testimony was admitted and the issue submitted to them. Hearsay testimony ordinarily is without probative effect. Suppose in such a case where same is admitted the jury makes a finding based on same, could it be for a moment contended that such a finding was based on passion or prejudice? It is thought not, even though the evidence clearly be insufficient to support the verdict.

The jury found the train in question was not under control. Control, as the controversy developed, depended on speed. There was no evidence that the brakes and the devices for controlling the train were not in proper order. Defendant's engineer testified that in his judgment his speed was 30 miles an hour. There is no question but the evidence raised the issue as to the speed of the train constituting negligence when taken in connection with the low visibility, the consequence of the fog then prevailing. This finding does not evidence passion and prejudice. This is true even though the issue, together with supporting issues, might not justify a recovery.

There was a finding that at the time in question defendant did not maintain an adequate warning device at the crossing, and that same was negligence and was a proximate cause of plaintiff's injury. It is clear at or near the crossing some sort of warning device in the nature of a wig-wag was maintained by defendant. In the statement there is no detailed description of the device. It was a bell and lighted or illuminated disc. On the occasion in question plaintiff Haney testified he was keeping a lookout and failed to either hear the bell or see the light. It is perhaps, a reasonable inference that a warning signal at a railroad crossing that can be neither seen nor heard by one approaching a crossing, a fog prevailing, is inadequate to properly warn the approach of a train along the track. The bell may have been ringing, it might have been heard by others and still might not have been heard by one approaching the crossing in a truck. There is incident to the operation of a truck necessarily some noise. It might be said this is true as to the operation of a railroad train, and that the engineer and fireman each heard the bell. To this it might be said that their position and the position of plaintiff was somewhat different. They had reason to believe that the bell was sounding there and were expecting to hear same. It seems that it would be a reasonable precaution on their part to ascertain whether the signal was functioning before proceeding across the crossing. It is not believed that this finding establishes that passion or prejudice inheres in any part of the verdict.

Issues were submitted on discovered peril. These issues are numbered 7-1, 7-1a, 7-1b, 7-1c, 7-1d, 7-1e, and 7-1f. Issues 7-1 and 7-1a could, under the evidence, be answered only in the way they were answered by the jury. Under the evidence Haney was in a position of peril before the collision and he was discovered by defendant's fireman before the collision. So as to issue No. 7-1b. Before the collision there was a realization of defendant's fireman of Haney's danger. The controversy arises as to the· finding that after the discovery and realization of Haney's peril that by the use of ordinary care the injury could have been prevented by defendant's employees.

The testimony of the fireman is that, on discovering the near approach of the automobile to the intersection, he shouted to the engineer to "big-hole" the train. This the engineer seems to have done, but this did not prevent the collision, although it seems same was almost averted. There is no evidence of lack of promptitude on the part of the engineer in the application of the brakes. If the collision could have been avoided it seems that some other means than slackening the speed of the train must

have been resorted to. Plaintiff contends that a blast of the whistle would have done it. This, I think, is a mere conjecture. It is thought that the issue of discovered peril was not raised by the evidence.

If the evidence was insufficient to raise the issue, it was not an issue in the case. It should not have been submitted to the jury.

If an improper finding by the jury on an issue not in the case vitiates findings on the real issues in the case, then one of the purposes of submission on special issues is defeated. Had this case been submitted on a general charge and the issue of discovered peril submitted, perhaps it would necessitate a reversal of the case. But here we have a judgment founded on material issues arising under the pleadings and evidence. Each and every member of the jury concurred in arriving at a verdict on these material issues.

If we are correct in the holding that the submission of discovered peril was not justified by the evidence might passion and prejudice on the part of the trial judge be as logically inferred from the improper submission of the issue as on the part of the jury from an improper finding thereon? Passion and prejudice are not to be presumed, and it may well be that the finding of the jury came about through a misapprehension of the factual elements involved.

The finding on one other issue is assailed as being against the great preponderance of the evidence, and hence evidencing the taint of passion and prejudice. The jury found that no flagman or watchman was maintained at the crossing; that same was negligence and a proximate cause of the injury to plaintiff. Neither watchman nor flagman was maintained at the crossing under the undisputed evidence. The factual basis giving rise to a duty to have a flagman at the crossing was not submitted. It is unnecessary to decide whether on this finding a recovery can be sustained. The finding of the jury does not evidence either passion or prejudice.

Considering together the alleged misconduct of the jury, the amount of damages assessed, and the findings of the jury on the issues, the taint of passion or prejudice in the verdict is not fairly deducible. The true rule in this matter is laid down in World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962. Had the jury found that the whistle was not blown, the bell not rung, or that no warning device was maintained, a different question might be presented. These are not the findings. The findings of a jury may not be sustained by the evidence and still be free from the taint of passion and prejudice. This rule, we take it, is fairly deducible from World Oil Company v. Hicks, supra.

Special issues No. 1, 1-A and 1-B, and the findings of the jury thereon were as follows:

"No. 1. Do you find from a preponderance of the evidence that defendant railroad company's train was being operated at an excessive rate at the time it approached the highway crossing on the occasion in controversy? Answer 'yes' or 'no.'"

"We, the jury, answer Yes."

"No. 1-A. Do you find from a preponderance of the evidence that it was negligence, as that term 'negligence' has been hereinbefore defined, on the part of the defendant railroad company to so operate its train at an excessive speed, if you have found it did so operate said train in answer to the foregoing Issue No. 1? Answer 'yes' or 'no.'"

"We, the jury, answer Yes."

"No. 1-B. Do you find from a preponderance of the evidence that such negligence, if any you have found in response to the foregoing Issue No. 1-A, was a proximate cause, as that term 'proximate cause' has been hereinbefore defined, of the injuries to plaintiff Conrad Haney? Answer 'yes' or 'no.'"

"We, the jury, answer Yes."

It is held that the evidence was ample to support the findings of the jury that the rate of speed at which defendant's train approached the crossing constituted negligence, and that such negligence was a proximate cause of plaintiff's injury. The surrounding facts and circumstances are undisputed. Fog rendered visibility low. In the opinion of the engineer the train was operated at a speed of thirty miles an hour. If these findings are sustained by the evidence, on the issues above quoted, plaintiff established the liability of defendant.

Error as to the form of submission of special issue No. 1 is assigned. After copying the issue, the proposition is as follows: "The same gave the jury no standard of comparison or criterion to go by, and permitted the jury to speculate thereon and to decide the issue on the logic,

and that alone, that if the train had not been there, the accident would not have happened, and that if the train had run slower, it would not have reached the point before the plaintiff had passed the same, and it was therefore error for the Court to submit said issue and its subordinate issues, Nos. 1-A and 1-B, as to negligence and proximate cause, respectively, over the objection of the defendant that it authorized the jury to answer the same in the affirmative on the logic that if the train had not been there, the accident would not have happened."

Appellant in the trial court objected to this issue as follows:

"Defendant objects to the submission of Issue No. 1 and its subordinate issues Nos. 1-A and 1-B relating to whether or not the defendant's train was operated at an excessive speed on the occasion in question, and defendant says:

"(a) That there is no evidence in this record authorizing the submission of said Special Issue to the jury.

"(b) That there is in the evidence no criterion as to the rate of speed that defendant's train should have been driven and such question by reason of lack of evidence authorizes the jury to speculate upon the rate of speed, not by reason of any evidence in the record, but by reason of what they may think or feel individually or as a whole, and the rate of speed at which a train should be operated not being a matter of common knowledge.

"(c) That the question is so framed as to authorize the jury to answer the same in the affirmative on the well-known logic that if the train had not been there, the accident would not have happened, and, therefore, the answer would not be sufficient to authorize the submission of Issue No. 1-A as to negligence, and the submission to the jury of Issue No. 1-A as to negligence is wholly unauthorized, even if the answer of the jury to Question No. 1 should be in the affirmative."

Now the gravamen of appellant's objection to the issue was, that there was no evidence in the record showing that the train was operated, on the occasion in question, at an excessive rate of speed. After all, the objection goes rather to the lack of evidence to support the issue than to its form. It is thought that what was really meant was, that the evidence failed to show what was the proper rate of speed to operate a train under the circumstances involved. Of course, the proposition assails the issue on the ground that no direction was given the jury as to what would constitute an excessive rate of speed. This, however, was not the objection before the trial court. If there is any error in the form of special issue No. 1, the objection urged was insufficient to call attention to the vice, if any, therein.

The case of Fort Worth & R. G. Ry. Co. v. Sageser, Tex.Civ.App., 18 S.W.2d 246, 250, is cited in support of appellant's proposition. In the opinion the issue is not set forth. It is stated the jury, in answer to special issue No. 1, found the defendant, in the operation of its train at an excessive rate of speed, guilty of negligence which was the proximate cause of Sageser's death. The issue is criticized in that same is said to be duplicitous; further, that the word "excessive" tended to confuse the jury. It is thought that the confusion arose from the failure to define or explain in some manner what was an excessive rate of speed. Of course, the "ordinary care" standard would apply. In the instant case appellant's proposition is, "the same gave the jury no standard of comparison or criterion to go by." Its objection was that there is in evidence no criterion as to the rate of speed.

There is considerable similarity between the case of Fort Worth & R. G. Ry. Co. v. Sageser, supra, and the case under consideration here. It was a crossing accident between a train and an automobile. It was there said: "We believe the plaintiffs' pleadings properly based their right to recovery on two propositions: First, that the rate of speed, whatever it was, at which appellant's agents operated said train, constituted negligence under the circumstances; and, second, that such negligence proximately caused the death of Miller Sageser. The plaintiffs' pleadings clearly draw such issues, and it is alleged that the train was operated at 'about 45 miles per hour.'" Here, we think, practically the same issues were involved and passed upon by the jury, namely: If the rate of speed at which appellant's train approached the crossing in question constituted negligence, was such negligence a proximate cause of plaintiff's injury? This, we think, established liability and the finding was sustained by the evidence.

I concur with the holding of Judge WALTHALL as to the excessiveness of

the verdict, and that the remittitur of $10,-000 should be required as condition to the affirmance of the judgment.

## On Rehearing.

WALTHALL, Justice.

In the opinion this court affirmed the judgment of the District Court, but upon the condition that the appellee, within twenty-five days, would file a remittitur in the amount of $10,000.

The appellee, within twenty-five days, filed in this court a motion to set aside the judgment insofar as it required a remittitur as a condition to the affirmance of the judgment, and to grant him a rehearing and in all things affirm the judgment.

■ The order of this court in ordering the remittitur was clearly error, as this court was without power and jurisdiction to require a remittitur, it not appearing from the record that the verdict was in any way influenced by passion and prejudice.

We sustain appellee's motion to set aside the order requiring the remittitur as a condition to the affirmance of the judgment.

It has often been truly said that it is difficult, indeed, for courts or jurors to set a monetary compensation for injuries sustained. The facts are so different in each case. In this case the issue of compensation was submitted to a jury on the evidence, and it was solely the duty of the jury to state in its verdict the compensation the appellee should receive, in the event the Railroad was found to be negligent in causing appellee's injuries.

We fully considered the evidence on each issue submitted to the jury, and while we thought, in writing the opinion, it was doubtful whether some of the issues submitted should have been submitted, we concluded that the jury findings on the issues of negligence and proximate cause were well sustained on the undisputed rate of speed at which the train was moved as it crossed the highway.

We come now to consider appellant's, the Railroad's, motion for a rehearing and to reverse and remand the cause.

The grounds urged for reversal are that this court erred in overruling its assignments of error discussed in the opinion. It is submitted and insisted by appellant that because this court held that several of the issues submitted to the jury should not have been submitted, not having sufficient support in the evidence, that the jury rendered a verdict which is excessive, and that this court, in view of such findings, held that appellant had not received a fair trial at the hands of the jury.

■ We do not think that every excessive verdict would necessarily indicate an unfair trial, or that an excessive verdict would indicate, as a matter of law, that the jury's verdict necessarily was influenced by passion or prejudice. But the rule seems to be that if the verdict is grossly excessive, that fact may be regarded to some extent as reflecting the jury's mind in arriving at the verdict. World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962. We do not say that the verdict is so grossly excessive as to make the rule applicable.

■ In writing the opinion we thought that under the undisputed testimony of the train crew as to the speed of the train in crossing the highway, the darkness of the morning, and the added darkness caused by the fog, to the extent that the driver of the automobile could not, or at least did not, see the wig-wag, and the absence of any person at the crossing to warn travelers of the approach of the train, indicated to this court that appellant was negligent vel non, in driving the train across the highway at a speed of thirty miles an hour.

■ We may be in error in holding, as in the opinion, that the verdict and judgment based thereon is excessive. We have again reviewed the entire case, and while we thought the verdict was excessive, it certainly is not so grossly excessive as to suggest a reversal solely on that alone. There is nothing in the record, as we view it, to indicate that the jury was in the least biased or prejudiced. While the compensation is large, so was the injury.

We have reconsidered each of appellant's grounds for reversal in its brief and in its motion for a new trial and not discussed, and they are overruled.

We have concluded to overrule appellant's motion for a new trial.

The case is affirmed.