The TEXAS AND PACIFIC RAILWAY COMPANY, Appellant,

v.

Jessie MIDKIFF, a widow, et al., Appellees.

No. 3148.

Court of Civil Appeals of Texas.

Eastland.

Feb. 11, 1955.

Rehearing Denied March 4, 1955.

Conner & Conner, Eastland, Wagstaff, Harwell, Alvis & Pope, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, J. Frank Sparks, Eastland, for appellees.

LONG, Justice.

On March 30, 1953, A. R. Midkiff was killed in a collision between a truck which he was driving and a Texas and Pacific Railway Company passenger train at the Lake Burnie crossing in the city limits of Cisco, Texas. Jessie Midkiff, his surviving wife, filed this suit against The Texas and Pacific Railway Company to recover damages for his death. Thereafter, Zurich General Accident Liability Insurance Company, Ltd., Inc., the compensation carrier, intervened as a party plaintiff by reason of its having paid the death claim arising out of the collision. Based upon a jury verdict on special issues, judgment was rendered against defendant for $31,440 with interest and costs, the judgment providing that the intervenor be paid $7,960.54 and costs out of said judgment as reimbursement for compensation paid. The railway company has appealed.

By various points, appellant urges that the deceased, A. R. Midkiff, was guilty of contributory negligence as a matter of law and, therefore, appellee cannot recover. In passing upon this question we must consider the evidence in its most favorable light to appellee from the position of the deceased just before and at the time of the collision, rejecting all evidence favorable to appellant. Kirksey v. Southern Traction Company, 110 Tex. 190, 217 S.W. 139. When the evidence is so considered, we cannot hold that contributory negligence on the part of the deceased is shown as a matter of law. The law presumes that Midkiff was doing whatever was reasonably necessary for his own safety and appellant must prove conclusively that he was not so doing in

order to relieve itself of the consequences of its negligent acts. Gulf, C. & S. F. R. Co. v. Bouchillon, Tex.Civ.App., 186 S.W. 2d 1006. Contributory negligence cannot be presumed. It is usually a question of fact for the jury.

The crossing where the collision occurred is situated within the city limits of Cisco, Texas, and is a fairly well used crossing. The deceased, A. R. Midkiff, was driving a truck for Hickock Development & Producing Company which was loaded with water. The crossing is located west of the depot in Cisco and about 300 feet east of a sharp curve. Midkiff was traveling in a southerly direction at the time of the collision at about 20 miles per hour. There are four sets of tracks at this location, the main track of the Texas and Pacific Railway Company, two passing tracks and the track of the Missouri-Kansas-Texas Railway Company located about 500 feet north of the Texas and Pacific tracks and parallel to them at this point. A person on the Lake Burnie road traveling from north to south as the deceased was on this occasion, must first cross the Missouri-Kansas-Texas tracks and then proceed south 200 or 300 feet, making a sharp turn and travel parallel to the Texas and Pacific tracks for about 100 feet, then make a short right-hand turn and pull up over the railway dump and over the tracks. Between the Missouri-Kansas-Texas tracks and the Texas and Pacific tracks the road runs into a depression and a person traveling this road part of the time would have his back to the Texas and Pacific track and in order to see a train traveling from the west to the east must turn his head entirely around in a westerly direction. On the occasion of the collision, the Texas and Pacific passenger train, which was due in Cisco about 1:05 P.M., and was running practically on time, was traveling from the west to the east. There is evidence that the train approached the crossing at about 50 to 60 miles per hour. There is evidence that the whistle was not blown and the bell was not rung until just immediately before the collision. We quote from the witness Fields who testified as to the conditions existing at the crossing as follows:

"A. You turn and drive alongside of the railroad until you pull right up on it nearly. It makes it hard to see back here if a train was coming, and there was a lot of tall grass back over in here. I don't know whether this shows it very plain or not, and some trees and several mounds of dirt right over here that made it hard to see. You also, if you were looking for a train, you would have to turn all the way around and look behind you, and it's an awful bad crossing.

\* \* \* \* \* \*

"Q. Now, I believe you say there was tall grass along there? A. Yes, sir, Johnson grass.

"Q. And some hills of dirt? A. Yes.

"Q. Did that obstruct your view any? A. Yeah.

"Q. In seeing the trains? A. It sure did.

"Q. Now, is this a dip in the road right along here, Ted? A. Yes, it's a low place from \* \* \* all along after you get across the Katy crossing until you start up on that T.P., it's low place down in there and makes it a lot harder to see if there's a train coming.

"Q. I see. Now, Ted, as you pull up to that rise, right before you go over the Lake Burnie crossing, is that a pretty steep rise there? A. Yes, sir, it is.

\* \* \* \* \* \*

"Q. Did you have to gear down to go across? A. Yes, we always geared down before we started up the rise.

"Q. In other words, you went over that crossing very slowly, didn't you? A. Yes.

"Q. Would you say it took you as long as ten seconds from the time you got to the foot of that rise until the time the end of your trailer cleared the

crossing? A. From the time we started up?

"Q. Yes, sir. A. With the front of your truck?

"Q. Yes, sir. Until you cleared the * * * A. Well, it would take several seconds, I don't know just * * *

"Q. It would take a pretty good long time? A. It would take quite a good little time to get up there.

"Q. Now, as you made this turn before you went across the crossing, say at this position right here. Now, right there you should be about twenty-five feet back of the closest track, wouldn't you? A. I can't tell much about the picture, I guess you would.

"Q. I think the testimony shows, Ted, that this is a picture looking from north to south across the Lake Burnie crossing in the direction that A. R. Midkiff was traveling; that this is the rise that you go up right here. A. Yes, right here.

"Q. That picture would be taken, say about twenty-five feet this side of the closest rise there. A. That's right.

"Q. Now, from that position right there, how far up the railroad track could you see a train coming? A. Well, you can see about to that curve there, which is not very far. You can't see it until you get right up on it, though."

 The deceased was driving a heavy truck loaded with water. There is evidence that the road at the crossing was very steep and that it was necessary for a driver to go in low gear in negotiating the crossing. There is a sharp curve 300 feet west of the crossing. There is evidence the train did not emit any kind of a warning signal prior to the collision. There is evidence that it was running at a rapid rate of speed. The deceased approached the crossing driving his truck at about 20 miles per hour. From this evidence and all the facts and circum-

stances we cannot say that the deceased was guilty of contributory negligence as a matter of law. We hold that reasonable minds might differ as to whether deceased was guilty of contributory negligence. The jury could have properly concluded that the deceased was not guilty of contributory negligence. This being true, the trial court properly submitted the issue raised by the pleadings and the evidence and did not err in refusing to instruct a verdict for appellant. St. Louis B. & M. Ry. Co. v. Brack, Tex.Civ.App., 102 S.W.2d 261; Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683 (Writ Ref.). The rule in crossing accidents such as this is that an injured party will not be deemed guilty of contributory negligence as a matter of law when there is some explanation comparable with reason why he did not see the train with which he collided in time to avoid the collision. When some care is shown the sufficiency thereof is a question for the jury. Gifford v. Fort Worth & D. C. Ry. Co., 151 Tex. 282, 249 S.W.2d 190.

Appellant makes the further contention that the deceased was guilty of contributory negligence because he violated Article 6701d, Sec. 86 of Vernon's Annotated Civil Statutes which is as follows:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train;

(b) A crossing gate is lowered, or when a human flagman gives or continues to give a signal of the approach or passage of a train;

(c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its

speed or nearness to such crossing is an immediate hazard;

(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

It is not contended that subdivision (a) and (b) apply. The jury found that deceased did not violate subsection (d).

The court submitted the following special issue No. 11 which was answered in the affirmative:

"Do you find from a preponderance of the evidence that A. R. Midkiff failed to stop the truck he was operating upon approaching the crossing involved and when within not less than fifteen feet and not more than fifty feet of the main line of defendant's track at the crossing involved, when there was an approaching engine of defendant within approximately 1500 feet of the crossing, emitting a signal warning audible for such distance, if it was, and such engine by reason of its speed or nearness to the crossing constituted an immediate hazard or danger to A. R. Midkiff? Answer 'Yes' or 'No.'"

To our minds the affirmative answer to special issue No. 11 does not mean anything. The issue is so worded by placing after the phrase "emitting a signal warning audible for such distance" the qualifying words "if it was" renders the affirmative answer thereto of no meaning. In other words, the answer was not a finding that the train did emit a signal at such distance and does not convict the deceased of violating this subsection. However, if we should be mistaken in so holding and if it should be determined that the affirmative answer is a finding that deceased violated the statute, still the jury found such violation was not a proximate cause of the collision. We are asked to hold that the failure of the deceased to stop his truck in violation of subsection (c) was a proximate cause as a matter of law. This we cannot do. What has heretofore been said is equal-

ly applicable here. We must view the evidence in its most favorable light in support of the judgment and from the standpoint of the deceased at the time. When this is done, we hold that whether the failure of deceased to stop his truck was a proximate cause was a question of fact for the jury. Lewis v. Thompson, Tex.Civ.App., 244 S.W.2d 286.

By its fifth point appellant urges that there is an irreconcilable conflict between the answers to special issue No. 11 and special issue No. 15. Special issue No. 15 is as follows:

"Do you find from a preponderance of the evidence that when Defendant's train was within approximately fifteen hundred (1500) feet of the crossing Defendant's engine emitted a signal audible from such distance?"

To this issue the jury answered "No." We find no conflict between these answers. As heretofore stated, the affirmative answer to issue No. 11 is not a finding that the train gave a signal prior to the collision. Furthermore, the jury had theretofore found that the failure of the train to give a signal was not a proximate cause of the collision. The judgment for appellee is not based upon the failure to give a warning but rests entirely upon excessive speed of the train. "To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense while the other would destroy it." Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 991; Siratt v. Worth Construction Co., Tex., 273 S.W. 2d 615. This point is overruled.

The jury found in answer to issues Nos. 1 and 2 that appellant's train at the time and on the occasion in question was being operated at a greater rate of speed than was reasonable and practical under the circumstances then and there existing and that such operation was a proximate cause of the collision. Appellant con-

tends the evidence is insufficient to warrant the submission of these issues and that the answers thereto were contrary to and against the great weight and preponderance of the evidence. We cannot agree with this contention. We believe the evidence was sufficient to require the submission of the issues and that the answers of the jury thereto are supported by the evidence. It is true the evidence was conflicting but this was for the determination of the jury. There were three witnesses at a pig pen near the track and about 400 to 500 feet west of the crossing where the collision occurred. They each estimated the speed of the train at from 50 to 60 miles per hour when it passed this point. There was evidence that it did not slow down at any time before it went around the curve 300 feet west of the crossing. The impact between the train and the truck practically demolished the truck. The noise of the impact was heard several blocks from the crossing. The law is well settled that negligence and proximate cause may be proved by circumstances and where there is any evidence from which a jury might have properly found negligence and proximate cause such finding is binding upon this court. We have no authority to disturb it. 30 Tex.Jur. 826, Sec. 150; Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723. The burden was not upon the appellee to establish her case beyond a reasonable doubt. She was only required to convince the jury by a preponderance of the evidence that the collision resulted from the negligence of the appellant and that such negligence was a proximate cause of the death of A. R. Midkiff.

By its ninth point appellant contends the trial court erred in refusing to submit the following issues to the jury:

"Special Issue No. 30: How many miles an hour do you find from a preponderance of the evidence the driver of the truck or motor vehicle was going just prior to the time of the collision? Answer in miles."

"Special Issue No. 31: Do you find a preponderance of the evidence that such speed constituted negligence under all the circumstances? Answer 'Yes' or 'No.' Answer:————.

"Only in the event you answer Special Issue No. 31 'Yes' will you answer this question.

"Special Issue No. 32: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the collision? Answer 'Yes' or 'No.' Answer: ————."

Appellant plead "the deceased was guilty of negligence in operating the motor vehicle he was driving at an excessive rate of speed under all the circumstances just prior to attempting to pass upon and over said crossing." We find no error in this point. Requested special issue No. 30 is not an ultimate issue of fact under the pleadings and evidence. Appellant did not plead that the deceased was operating the truck. at any specified rate of speed just prior to or at the time of the collision. There were no pleadings which required the submission of said issue. See Texas Rules of Civil Procedure, rule 279.

By other points appellant attacks the finding of the jury and contends that they are contrary to and against the great weight and preponderance of the evidence. We have carefully examined the evidence and are of the opinion that it is sufficient to support such findings. We have considered all points of error raised by appellant and find no merit in any of them and they are accordingly overruled.

The judgment of the trial court is affirmed.