PORT TERMINAL RAILROAD ASSOCIA-
TION et al., Appellants,

v.

Ada Lee NOLAND, Appellee.

No. 12857.

Court of Civil Appeals of Texas.

Galveston.

Feb. 16, 1956.

Motions for Rehearing Denied
March 22, 1956.

Raymond A. Cook and Hall E. Timanus, Houston, Andrews, Kurth, Campbell & Bradley, Houston, of counsel, for appellants.

J. Curtiss Brown and W. James Kronzer, Houston, Hill, Brown, Kronzer & Abraham, Houston, of counsel, for appellee.

HAMBLEN, Chief Justice.

This suit was instituted in the District Court of Harris County by the appellee, seeking to recover damages for personal injuries in a collision between the automobile which she was driving and a locomotive owned and operated by appellants. Plaintiff alleged specific acts of primary negligence on the part of appellants' operatives, and further alleged liability under the doctrine of discovered peril. The defense consisted of allegations of contributory negligence, including in particular the allegation that the appellee had violated the provisions of Section 86(d) of the Texas Uniform Traffic Code. Trial was had before a court with a jury which, at the conclusion of the evidence and in response to special issues submitted by the court, found the appellant railroad company through its operatives negligent in several respects, including the failure to sound the whistle on the locomotive, failure to ring the bell on the locomotive, failure to apply the brakes on the locomotive, and failure to keep a proper lookout, all of which were found to be a proximate cause of appellee's injuries. The jury likewise found that the crossing was an extra hazardous crossing as defined in the court's charge. Appellant was exonerated from liability under the doctrine of discovered peril and appellee was found not guilty of all allegations of contributory negligence leveled against her. Damages were assessed by the jury at $79,400 and a judgment in favor of appellee was rendered by the court upon such verdict.

Three points of error are asserted by the appellants. Their first and second points relate solely to appellee's alleged violation of Section 86(d) of the Texas Uniform Traffic Code. These points are to a certain

extent related and will be to that extent treated together. Appellants' third point is directed to the asserted excessiveness of the jury verdict and will be treated separately.

Appellee, driving an automobile, was proceeding in a northerly direction on 75th Street in the City of Houston. Appellant's locomotive, pulling a string of freight cars, was proceeding east along its track which crossed 75th Street at right angles. Buildings along the west side of 75th Street were constructed to a point within 54 feet of the nearest rail of the crossing railroad track. Between such buildings and the railroad track was a tree with low-hanging branches. The railroad crossing was not protected by any automatic signalling device nor by a flag man, but only by stationary cross-arms. Appellee was proceeding at a speed of between 20 and 30 miles per hour as she approached the railroad crossing. She testified that she had driven along that street on previous occasions and was well aware of the existence of the railroad. She looked first to her left, then to her right and saw nothing, and proceeded on to cross the track when she was struck from her left by appellant's locomotive. She testified that she did not hear either a whistle or a bell and that she did not see the approaching train until the very instant of the impact. Her testimony relative to the whistle and bell was corroborated by two City of Houston policemen who were in front of one of the buildings above mentioned and who testified that the whistle and bell were not sounded on the locomotive. These witnesses estimated the speed of the train as between 20 and 25 miles per hour.

The operatives of appellant's locomotive, including the engineer and fireman, testified that the bell and the whistle were sounded and that the train was proceeding at 10 to 12 miles per hour. None of the train crew offered as witnesses saw appellee's automobile until the instant of the collision. These witnesses testified that the crossing was a "blind" crossing and that unless the whistle and bell of an approaching train were sounded, a collision was likely to result. We feel that in view of this state of the record every finding of the jury of primary negligence, as well as its finding that the crossing was extra hazardous, is amply supported.

Appellants' point 1, however, is to the effect that under the undisputed evidence appellant's train was "plainly visible" within the meaning of Section 86(d) of the Texas Uniform Traffic Code and that the trial court erred in not holding that appellee's failure to stop was a violation of such statute, convicting her of contributory negligence as a matter of law. We overrule such point.

The pertinent portions of Section 86 of the Uniform Traffic Code, art. 6701d, Texas Revised Civil Statutes, the construction and applicability of which are so material to this appeal, provide as follows:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

\* \* \* \* \* \*

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

The evidence upon which appellants rely in support of their first point of error consists of photographs and maps which they contend demonstrate conclusively that at any assumed speed at which the locomotive and the automobile, respectively, were traveling consistent with the evidence relating to speed, the locomotive was bound to have been visible to the driver of the approaching automobile before the automobile reached a point 50 feet from the nearest rail of appellant's railroad track. The effect of their contention is to say that "plainly visible" means simply and arbitrarily that an object is plainly visible from any given point when there exists no physical obstruction to the line of vision of a person located at such point. As a part of their argument, they state "If the train

is 'plainly visible' when the motorist enters this prescribed zone (50 feet to 15 feet from the nearest rail), he is under an absolute duty to stop short of the crossing." They further say "Since appellee's violation of the statute makes issues of primary negligence immaterial, the question of whistle and bell will determine nothing on this appeal." In other words, it is their contention that the words "plainly visible" as used by the Legislature mean visibility provable conclusively by the application of the law of the science of physics. Without reference to any attendant circumstances and without reference to negligence on the part of the railroad, their argument under their stated proposition presents an abstract proposition which they state must be accepted whenever an approaching train is "plainly visible", as they have construed the meaning of that term. We are unable to accept appellants' construction of the pertinent statute either abstractly or in so far as it is applicable to the facts of this case.

We have examined numerous cases decided by the courts of this State wherein similar contentions have been advanced. In Missouri-Kansas-Texas Railroad Co. of Texas v. McFerrin, Tex.Civ.App., 279 S.W. 2d 410, 416, the court makes the following statement: "Ft. Worth & Denver R. Co. v. Barlow, Tex.Civ.App., 263 S.W.2d 278, Fort Worth, writ ref., N.R.E., involved a nighttime collision between a train and car, the jury finding, as here, that the car driver did not fail to stop as required by the statute and that while he failed to see the approaching train this was not negligence. Judgment for plaintiff was reversed and remanded because of error in the charge. This case is, in our opinion, strong authority for denying that this statute lays down an inexorable rule applicable in all crossing collisions and regardless of all attendant circumstances. This conclusion is confirmed by the opinion in Texas Mexican R. Co. v. Bunn, Tex.Civ.App., 264 S.W.2d 518, San Antonio, writ ref., N.R.E., cited by appellant and also a nighttime crossing collision case. The Court there held the statute inapplicable even though the motorist did not stop, the Court refusing to hold, as a matter of law, that the train was 'plainly visible' within the meaning of the statute."

In Fort Worth & D. Ry. Co. v. Barlow, 263 S.W.2d 278, 281, the Fort Worth Court of Civil Appeals uses the following language: "We think the rule to be deduced from the cited cases is that an injured party will not be deemed guilty of contributory negligence as a matter of law when there is some explanation, comportable with reason, why he did not see the object with which he collided in time to avoid the impact. When some care is shown, the question of its sufficiency is for the jury. Gifford v. Fort Worth & D. C. Ry. Co. [151 Tex. 282], 249 S.W.2d 190; * * *."

In Texas & Pacific Railway Co. v. Midkiff, 275 S.W.2d 841, 845, the Eastland Court of Civil Appeals makes the following statement: "We are asked to hold that the failure of the deceased to stop his truck in violation of subsection (c) was a proximate cause as a matter of law. This we cannot do. What has heretofore been said is equally applicable here. We must view the evidence in its most favorable light in support of the judgment and from the standpoint of the deceased at the time. When this is done, we hold that whether the failure of deceased to stop his truck was a proximate cause was a question of fact for the jury. Lewis v. Thompson, Tex.Civ.App., 244 S.W.2d 286."

The effect of the decisions to which we have referred is to say that the term "plainly visible" cannot be determined in the objective manner for which appellants contend. Rather it appears to be the law that in determining whether or not a train is "plainly visible" it is necessary to approach the question from a subjective viewpoint, taking into account the visual perceptivity of a person in a position and under the circumstances of the particular automobile operator charged with violating the statute. Human conduct must be judged by human standards. Surdyk v. Indiana Harbor Belt Railroad Co., 7 Cir., 148 F.2d 795. Visibility as used in the statute is measured

by all of the circumstances of each particular case, including the neglect of the railroad and as the object would appear to a reasonable person rather than to a civil engineer applying the arbitrary laws of the science of physics. While the courts do not say it in so many words, the combined effect of their decisions is to say that that is plainly visible which is found to be plainly visible to a person of ordinary prudence under the same or similar circumstances.

The only case that appellants cite in support of their proposition that the appellee in this case must be held guilty of contributory negligence as a matter of law is that of Lackey v. Gulf, C. & S. F. Ry. Co., Tex. Civ.App., 225 S.W.2d 630. When·that opinion is examined and the facts there disclosed are considered, it becomes clear that what the court has said is that the plaintiff's testimony that he did not see the train is so inherently improbable under the facts as to be wholly insufficient to save him from the charge of contributory negligence. In other words, the court held that the facts presented a situation with reference to which reasonable minds could not differ.

■ As we have stated, appellants' argument under their first point is presented as an abstract proposition and what we have said clearly demonstrates our view that such proposition is incorrect. The effect of their stated point, however, is to contend that there is no evidence to support the jury's finding that the appellee in this case did not violate the provisions of Section 86(d) of the Texas Uniform Traffic Code. We have already alluded to the existence of buildings along the side of the street from which appellant's locomotive approached which were located within 54 feet of the railroad and to the further fact that between such buildings and the railroad there existed a tree with low-hanging branches. We have also alluded to the evidence which the jury apparently believed to the effect that the whistle and the bell were not sounded by the approaching locomotive. We have mentioned the fact that appellee had previously crossed this track and knew of its existence, and her testimony that she looked to the left and to the right, saw nothing, and proceeded to cross the track. We feel that this evidence alone is sufficient to support the jury's finding. We think the evidence and the finding of the failure to sound the whistle and ring the bell on the locomotive in connection with the other circumstances surrounding this collision are of great probative value in the light of the following quotation from the case of Pennsylvania R. Co. v. Shindledecker, 6 Cir., 44 F.2d 162, 163:

"If a driver at a particular crossing has been repeatedly stopped or warned by an automatic bell, or flashing light, or swinging signal, or other means familiar to him by which a coming train gives notice of its close approach, and if, on a particular occasion, he is paying sufficient attention to realize that this customary notice is not being given, it is, we think, an entirely permissible inference, even in the lack of any direct proof, that the absence of the usual warning has a substantial effect in leading him to go ahead, and in neutralizing that incessant watchfulness which self-protection would otherwise demand."

Before the trial court appellants requested a special issue which they designated as No. C, in the following form: "Do you find from a preponderance of the evidence that defendants' approaching train would have been plainly visible to the plaintiff if she had looked in the direction of the approaching train when she was at a point within fifty feet but not less than fifteen feet from the nearest rail of the railroad crossing?" This requested issue was refused by the trial court. The trial court submitted Special Issue No. 32 in the following form: "Do you find from a preponderance of the evidence that the approaching train of defendants was plainly visible and was in hazardous proximity to the crossing in question at a time when the plaintiff, Ada Lee Noland, could have brought her vehicle to a stop within fifty feet but not less than fifteen feet from the nearest rail of such crossing?" The action

of the court in refusing requested Special Issue No. C and in submitting Special Issue No. 32 forms the basis of appellants' second point of error.

■ Appellants' requested Special Issue No. C does not properly submit the ultimate issue from which could be determined the allegation of appellee's contributory negligence. When the statute is examined, it is seen that the Legislature did not specify at what point a train should become plainly visible in order to impose upon a motorist the duty of stopping within fifty feet but not less than 15 feet of the nearest rail. We have stated our conclusion, based upon the interpretation which other courts have placed upon the statute, that "plainly visible," as used in the statute, means plainly visible to a person of ordinary prudence under the same or similar circumstances. We hold that in no event does the statute impose the absolute duty of stopping if the train is plainly visible to the motorist when he is at a point within fifty feet but not less than 15 feet from the nearest rail, regardless of all other circumstances.

Rule 279, T.R.C.P., provides in part as follows: "Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the issue is one relied upon by the opposing party."

■ We have held that appellants' requested Issue No. C does not submit the ultimate issue, and is not in substantially correct wording. The issue is manifestly a defensive issue, and is not one relied upon by appellee in support of her case. Failure to submit the requested issue cannot therefore, under the cited rule, be deemed ground for reversal of the judgment.

■ In addition to the failure of appellant to request submission of the factual issue in substantially correct wording, the record does not disclose that appellant requested in writing any submission of the question of proximate cause resulting from the alleged violation of the statute. Under this record, proximate cause is a fact issue which must be determined by the jury favorably to appellants in order to support their asserted defense. Texas & P. Railway Co. v. Midkiff, supra.

■ In view of these conclusions, we deem it unnecessary to, and therefore do not pass upon appellants' objections to Special Issue No. 32 as submitted. Since the issue is defensive, and is not relied upon by the opposing party, objections to it do not suffice under the Rule. We overrule appellants' point 2.

■ Appellants' third point is to the effect that the damage award of $79,400 is manifestly excessive and the trial court erred in not ordering a new trial or a remittitur. After most careful consideration, we have concluded that appellants' third point is well taken for the reasons which we will undertake to state.

Appellee was a single woman, thirty-four years of age, employed by an oil company as a typist at a salary of $275 per month. As a result of the collision she was thrown from her automobile to the ground and was thereupon struck by some portion of the locomotive. She remained conscious for a period of at least thirty minutes while awaiting an ambulance and while being removed from the scene of the accident to a hospital. At the hospital a cut on her leg was sewed up by doctors, which procedure required six hours in time. This cut was shown to be about 18 inches long and to the bone. Her right had was broken and her pelvic bone was fractured. Her hand was placed in a cast, as was the pelvic area. On the day following the accident she was removed from the first hospital to another hospital where she was placed in a pelvis swing, which suspended her in the air above the bed. A week or two thereafter an operation was performed on her hand, requiring the insertion of three pins. She remained in the hospital from October 7th, the date of the collision, until about November 12th, 15th or 16th. After leaving the hospital, she remained in her home

for an additional period of approximately three months before returning to work about February 1st of the following year. The evidence shows that appellee endured great pain immediately after the collision, which persisted throughout the time she was confined to the hospital and to her home. Upon returning to work appellee earned the same salary that she had earned prior to the accident and continued to do so up to the time of the trial. In so far as incapacity or pain at the time of the trial are concerned, appellee testified as follows with respect to the lacerated leg:

"Q. What about the scar on your right leg, how did that heal up? A. It is healed up but I have an awful looking scar, and it's got scar tissue around it.

"Q. How does that affect you? A. Well, it doesn't hurt me any more, but as I say, when the weather changes it itches and I scratch about it, just things like that. But, so far as actual pain, it don't hurt me any more."

Appellee testified as follows concerning the fractured pelvis:

"Q. Miss Noland, What about your pelvic area, how is that at this time? A. Well, it still hurts me, it aches and pains. But, it doesn't do it constantly. Maybe two or three months, or a month, it won't bother me, but every once in a while it just aches and it will pain. And, Dr. Harrington told me it would hurt me and Dr. Glassman did too.

"Q. Miss Noland, on occasion, do you limp? I don't mean, do you do it all the time, but on occasion? A. On occasions. I don't limp now, but when I get sore I have a slight limp. It's not pronounced to where I go limping down the street, but I have a slight limp."

Concerning the broken hand, appellee testified:

"Q. As far as your right hand, what about your right hand? A. You mean so far as pain is concerned?

"Q. Yes, Ma'am. A. It's not sore any more.

"Q. I am asking you how it does give you any trouble? A. I can't close it, I don't try to use it too much. I tried to do everything I can do with it, but it's just like it's going to be, and that's all.

"Q. You are at this time a statistical typist? A. Yes, sir.

"Q. And you are able to do your work? A. Yes, sir.

"Q. Now, in doing that work do you have any difficulty in it that you didn't have before this train hit you? A. Well, when you usually type with the touch system you have regular keys you hit with your hands. I couldn't straighten out one finger and I can't hit, well, the 7, 6 and 0, so I have kind of shifted over to where I can do that with my left hand.

"Q. In other words, you use your left hand to compensate or make up for the disability of the right hand? A. Yes, sir."

A medical witness testified that the appellee's "deformities" which have been described above were permanent. He was unable to say whether additional operative procedure was advisable or not. The doctor did not testify that in all probability plaintiff would suffer any pain in the future other than that to which she had testified. Neither did he testify to any future diminution of earning capacity as a result of her injuries.

In so far as the proof shows, that portion of the recovery awarded to appellee which can be based upon loss of earning capacity appears to this Court to be limited to the four months actually lost by appellee, which amounts to $1,100. Save and except for that amount, the verdict is sustainable, if at all, upon the theory that it represented compensation for past and future pain and suffering resulting from the collision in question. Any undertaking on the part of a reviewing court to evaluate another in-

dividual's pain and suffering in dollars and cents is manifestly a most difficult task. There is almost no yardstick which may be employed which will remove the decision from the realm of pure subjective thinking. The only objective approach to the problem of which this Court is aware is that of comparing the award made with those which have been approved by other courts in comparable litigation. Unfortunately, neither litigant has undertaken to be of assistance to the Court in this particular respect. This Court has examined various legal reference works and encyclopedias for the purpose of assisting in the decision of the point here presented. Among such are 13 Tex. Jur., pages 302 to 312; 25 C.J.S., Damages, § 198, pp. 954 to 968; 15 Amer.Jur., pages 640 to 647. In those digests have been collated enumerable cases dealing with the question of the excessiveness of jury verdicts based upon injury. They are far too lengthy to do more than refer to them; but even a hurried examination, we think, will disclose that the verdict in this present case very greatly exceeds the highest award held not to be excessive in any combination of injuries which are in any way comparable to those suffered by this appellee.

We have also examined with interest the case of Texas & N. O. Ry. Co. v. Haney, Tex.Civ.App., 144 S.W.2d 677. In that case the plaintiff, a boy of eighteen, lost his leg above the knee. Two amputations were necessary, the suffering was intense and prolonged. He also suffered injuries to his head, scalp, and skin and bones of his head. The jury awarded damages in the sum of $32,359.25. On original submission the court held that award to be excessive by $10,000. On rehearing, however, the court held that while the award was large, it was not so excessive as to constitute reversible error. We think it important to note that in that case the court noted that almost of necessity the capacity of the plaintiff for earning had been materially decreased throughout the rest of his life.

We have also examined with particular attention the decision of the San Antonio Court of Civil Appeals in the case of Kimbriel Produce Co., Inc., v. Webster, Tex. Civ.App., 185 S.W.2d 198, which was decided in 1944. In that case the plaintiff was a young lady, nineteen years of age, who prior to her injury was employed as a typist earning $90 per month. As a result of the collision she suffered a severe concussion of the brain, a torn wound or cut on the head extending from the corner of the right eye up over the forehead into the scalp, a bruise on the back of the head and a severe cut across the bridge of the nose, and the femur of the left leg was broken, the bone protruding through the flesh. The left ankle was crushed and the soft tissue covering the ankle bone completely torn away. The plaintiff remained in the hospital for approximately one year. The fracture of the femur was set by means of an open reduction. Some nineteen pieces of skin and flesh were taken off of the thigh and grafted onto the ankle. The leg was placed in a splint and suspended by means of ropes and springs so that a constant tension was maintained on the leg. A second operation was performed on the leg in an effort to lengthen the tendons and stretch the muscles in order to permit the bending of the knee. As to the permanent effect of her injuries, the medical testimony was to the effect that the brain concussion had largely disappeared with the exception of occasional headaches, the head wounds had healed, leaving scars which were somewhat disfiguring and tender when touched, the femur had grown back in place but the muscles of the upper leg had been severely weakened by the injuries to the tissue. The knee action was restricted to an angle of 45 degrees. The ankle had become a solid piece of bone with no joint movements and movement in the foot was restricted to the toes. The contour of the left leg differed from that of the right leg. The left ankle was about 10½ inches in circumference as compared to 6 inches for the normal ankle. The left leg from the ankle to the knee was undeveloped while the thigh presented a swollen appearance because of scar tissue. Plaintiff was compelled to make use of crutches to move from one place to another, but in time might be able to get along with one crutch or perhaps a cane. The condition of her left leg rendered it impossible

for her to sit in a chair in a normal position but made it necessary to sit in a sideways position with the weight of the body resting primarily upon the right hip. In all probability she would be restricted to working less than the standard working day.

Upon the trial of that case, the jury awarded the plaintiff the sum of $46,000 to compensate her for past and future physical and mental pain and suffering and diminished earning capacity. The San Antonio Court of Civil Appeals declared such verdict to be excessive to the extent of $10,000 and ordered a remittitur in that amount. In the opinion, the court makes the following statement: "We regard the record as presenting an extreme case of past and probable future physical pain and mental suffering."

This Court recognizes that no two injuries are alike and do not have the same consequences or results in so far as damages are concerned. We have in some detail recited the facts upon which the San Antonio court ruled, as above indicated, because, in our opinion, those facts present a situation which should support a greater award of damages than could be supported under the facts in the case now being considered. The necessity of some degree of conformity as to the amount of verdicts and judgments in damage suits has been recognized. We have taken into consideration the decreased purchasing power of the dollar at the present time as compared with the purchasing power in 1944. We have concluded under all of the circumstances that the verdict of the jury in the present case and the judgment rendered thereon is excessive to the extent of $30,000.

The appellants' points disclosing no reversible error save that complaining of the excessiveness of the verdict, the judgment of the trial court will be affirmed if the appellee, Ada Lee Noland, will file in this Court within 15 days from the date hereof a remittitur of $30,000; otherwise, said judgment will be reversed and the cause remanded.

GANNON, J., not sitting.

On Motion for Rehearing and on Filing of Remittitur.

The motion for rehearing filed herein by appellants is overruled.

Appellee, Ada Lee Noland, has filed herein a motion for rehearing and also a remittitur of $30,000, as suggested by this Court. Said motion for rehearing is overruled. The judgment of the trial court in favor of Ada Lee Noland will be reformed in accordance with the remittitur, so as to allow appellee, Ada Lee Noland, a recovery of $50,504.05 against appellants, jointly and severally. The judgment as thus reformed will be affirmed. Costs of appeal will be taxed against appellee, Ada Lee Noland.

Reformed and affirmed.

GANNON, J., not sitting.