MISSOURI PACIFIC RAILROAD COMPANY et al., Appellants,

v.

Willard W. DEAN, Appellee.

No. 269.

Court of Civil Appeals of Texas.

Tyler.

June 22, 1967.

Rehearing Denied July 20, 1967.

Jackson, Walker, Winstead, Cantwell & Miller, Louis P. Bickel, Dallas, for appellants.

George L. Schmidt, Houston, for appellee.

MOORE, Justice.

Plaintiff, Willard W. Dean, brought suit for damages against defendants, Missouri Pacific Railroad Company and its employees, for personal injuries alleged to have been sustained by him when his automobile collided with defendant's freight train which was stopped on a public crossing in the City of Palestine, Texas. In view of the fact that the railroad company and its employees assert common defenses, the parties will hereinafter be referred to as plaintiff and defendant.

The basis upon which plaintiff predicated his suit for damages was that the defendant railroad company knew, or by the exercise of ordinary care should have known, that the railroad crossing in question was one which was a more than ordinarily dangerous nighttime crossing and by reason thereof, defendant was negligent in failing to equip the crossing with automatic warning signals and in failing to station a flagman at the crossing. In addition to those allegations, plaintiff also alleged that the defendant was negligent in failing to place some type of light-reflecting paint on the side of its freight cars and finally that the employees of the company were negligent in failing to open the crossing by breaking the train. Defendant denied the allegations of negligence and specially pleaded that plaintiff was guilty of contributory negligence.

The case was tried before a jury. In response to the special issues, the jury found (1) that the plaintiff suffered bodily injury as a result of the collision; (1–A) that the conditions surrounding the crossing were such as to render it more than ordinarily dangerous as a nighttime crossing; (1–B) that the defendant knew, or by the exercise of ordinary care should have known, that the crossing was more than ordinarily dangerous; (2) that the defendant failed to equip the crossing with automatic warning signals; (4) that the defendant failed to station a flagman at the crossing; (3, 5) that such negligence was

a proximate cause of the plaintiff's injuries; (6) that the failure of the defendant to open the crossing by breaking the train was negligence; (7) which was a proximate cause of the plaintiff's injuries; (8) that defendant was negligent in failing to place a light-reflecting paint on the car which plaintiff struck, and (9) that such negligence was a proximate cause of plaintiff's injuries. The jury exonerated the plaintiff of numerous acts of contributory negligence and found that the occurrence was not the result of an unavoidable accident. In answer to Special Issue No. 10, however, the jury found the plaintiff negligent in failing to keep a proper lookout, but found in response to Special Issue No. 11 that such negligence was not a proximate cause of the collision.

At the conclusion of the evidence, the defendant made a motion for instructed verdict on the ground that there was no evidence to support the submission of extra hazardous crossing and the negligence issues based thereon also on the ground that plaintiff was guilty of contributory negligence as a matter of law. The motion was overruled. After verdict, defendant moved for judgment notwithstanding the verdict, requesting the court to disregard the jury's findings to the effect that the crossing was more than ordinarily dangerous and also requesting the court to disregard the jury's answer to Special Issue No. 11 wherein the jury found that the plaintiff's contributory negligence in failing to keep a proper lookout was not a proximate cause of the collision. The trial court overruled the motion and rendered judgment for the plaintiff based on the verdict, awarding damages in the sum and amount of $82,300.00.

After its motion for new trial had been overruled, defendant perfected this appeal and has brought forward 81 points of error seeking a reversal of the judgment. Under the first seven points of error, defendant takes the position that the contributory negligence of the plaintiff in failing to keep a proper lookout was, as a matter of

law, a proximate cause of his injury irrespective of the fact that the jury found to the contrary. It asserts, therefore, that the trial court erred in refusing to disregard the jury's answer to Special Issue No. 11 and in refusing to enter judgment for the defendant notwithstanding the jury's verdict. The finding that plaintiff was guilty of contributory negligence stands unchallenged and therefore the only question presented under these points of error is whether plaintiff's negligence in that respect was, as a matter of law, a proximate cause of his injury.

■ Ordinarily, the question of whether the plaintiff's contributory negligence is a proximate cause of his injury is a question of fact, but in some instances the question becomes one of law. Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Cave v. Texas & Pacific Railway Company, (Tex.Civ.App.) 296 S.W.2d 558–560; Geo. D. Barnard Company v. Lane, (Tex.Civ. App.) 392 S.W.2d 769.

Proximate cause exists as a matter of law where the circumstances are such that reasonable minds could not arrive at a different conclusion. Texas & N. O. R. Co. v. Stewart, (Tex.Civ.App.) 248 S.W.2d 177; Wichita Valley Ry. Co. v. Fite, (Tex.Civ. App.) 78 S.W.2d 714.

■ In determining whether or not plaintiff's negligence in failing to keep a proper lookout was a proximate cause of his injuries as a matter of law, we must consider all the facts and circumstances presented by the evidence before us in a light most favorable to the plaintiff and then determine whether or not they are such that reasonable minds could reach different conclusions.

The evidence shows that the accident occurred at approximately 4:35 o'clock on the morning of March 9, 1964, at a point where defendant's railroad track intersects Texas Avenue in Palestine, Texas. Plaintiff, a police officer for the City of Palestine, was engaged in routine patrol duty, driving

a city-owned patrol car. He testified that he had been employed by the city for 8 or 9 years and had traveled over the crossing in question "hundreds" of times, both day and night. He testified that shortly before the accident, he had gone on duty and had driven his patrol car down Oak Street in a southerly direction toward the intersection of Texas Avenue which runs generally east and west. When he arrived at the intersection, he turned to his left and headed west on Texas Avenue toward the railroad crossing. The train in question contained 76 cars and had arrived in Palestine at approximately 4:00 A. M., coming from a southerly direction and was proceeding north. The engineer of the train had been instructed to pull the train as far north as possible and to stop the same so that the switching crew could then take over prior to performing certain switching operations. The 59th car in the train behind the engine was a car that is known as a "gondola" or a "coal" car. When the train stopped, it was this car that stood across and blocked the Texas Avenue crossing and it was this car with which the plaintiff collided. The evidence shows that Oak Street, on which he traveled for some distance just prior to the accident, runs parallel to the railroad tracks and is approximately 75 feet west of the tracks. The evidence further shows that the elevation of Oak Street in the area in question is some 4 to 6 feet above the elevation of the railroad tracks until the street reaches a point near the intersection with Texas Avenue where it then levels out. The elevation at the intersection was shown to be approximately one foot higher than the railroad track. Plaintiff admits in his testimony that as he drove along Oak Street there was nothing to obstruct his view of the railroad track for a distance of several hundred feet and that he could have seen the train standing on the track had he looked in that direction prior to turning to his left on Texas Avenue. The gondola car in question was painted black and had white lettering on the side thereof near each end of the car. It was 53 feet 8 inches long and stood 7 feet 3 inches above the rail. The bottom of the car at the center was 19 inches above the rail and at the time of the accident stood across the street blocking practically all of the traveled portion thereof. On each side of the gondola car were box cars which were several feet higher than the gondola car. It was undisputed that there was no obstruction on either side of Texas Avenue which would be calculated to block the view of the standing train. It was also undisputed that the usual cross-arm railroad crossing signs had been erected at the crossing, but that no flagman was present nor were there any automatic warning signals installed at the crossing. On the side of the crossing from which plaintiff approached, there was a street light with a 189 watt bulb approximately 67 feet from the point of collision. Also, there were two other similar street lights located at a distance of approximately 146 feet and 240 feet respectively. In addition to those lights, there was also a 1,000 watt railroad yard light on the side from which the plaintiff approached which was located approximately 150 feet north of Texas Avenue. The evidence further shows that the distance between the point of the intersection of Oak Street and Texas Avenue to the point of collision was approximately 80 feet. At the place where the railroad tracks crossed the street, there were five tracks which crossed the street at right angles. The train was occupying the third track from the intersection making it necessary for the plaintiff to have crossed over two of the tracks before the collision. The weather condition was described by the plaintiff as being "dark and rainy." According to other witnesses, a "light drizzly" rain was falling. In connection with the speed of his vehicle, plaintiff estimated that immediately before the impact, he was driving at approximately 20 to 30 miles per hour. According to the testimony of an eye witness to the collision, however, plaintiff was traveling at a speed of only eight to ten miles per hour. At any rate, it does not appear that plaintiff was traveling at a high rate of speed because even after the impact, the right front headlight continued

to burn and the automobile was backed away from the train under its own power. Also, the damage to the patrol car does not appear to have been extensive in view of the fact that the repairs amounted only to the sum of $243.59. In describing the situation immediately prior to the accident, plaintiff testified as follows:

"Q Now, when you turned over there off of West Oak on to Texas Avenue crossing, there across these tracks, what could you see?

"A See the lights.

"Q Tell us what you could see?

"A Just like you look down and what you would see was lights and clear. I didn't see anything.

"Q Was there anything there that would block your travel?

"A I didn't see anything there, period.

"Q All right. Now, is that a street light on past the railroad crossing?

"A I guess it was, because I could see the light, I guess that street light, that's all—

" * * *

"Q All right. As you were going down West Oak and you had made your turn to go to Texas Avenue, about what speed were you going?

"A I don't know whether the street light or my headlight, my headlight—I probably was going about—

" * * *

"Q There is mention of a light and lights from over in here.

"A About the light, it was clear, my lights, I could see in front of me, I couldn't see any obstruction, it looked like there was light on the other street to me it was just like—I've been across there, like you say, lots of time, there wasn't nothing there. But, my brother and police said I hit that black car, so I hit it.

" * * *

"Q Okay. You say, I believe you said, it was light and clear over across the tracks.

"A I didn't mean the weather or anything like that. It looked like the tracks was clear. I could see by my headlights there wasn't anything, it looked like down there it was clear, I didn't see nothing.

"Q You could see the distance of your headlights?

"A I don't know whether I could the distance or not. * * *"

Plaintiff was asked why he did not see the train.

"A I don't think probably anybody could have seen it. It was just that the type of weather and the color of the old car, old train, and they didn't have any lights or no one there to signal or no no nothing, no signals * * *

"Q All right. Now, let's go back out to that street crossing. Did you ever see any train across there?

"A No sir. I can truthfully say I didn't see any at all."

Plaintiff argues in his brief that the street light above the gondola car created an illusion, leading him to believe the crossing was unobstructed. It is not clear from his testimony whether he saw one street light or several; however, according to the pictures introduced by the plaintiff, there appears to be only one street light in the area across the tracks. Nowhere in his testimony did he say that the light blinded him or distracted his attention or that the light was such that it prevented him from seeing the train. There was no testimony offered showing that anyone else had ever suffered any accident or near accident at the crossing.

As we view the plaintiff's testimony, he says that even though the night was dark

and raining and even though there was a distant street light visible above the gondola car, he nevertheless saw the crossing in his headlights and it appeared to be clear.

We know as a matter of common knowledge that a railway freight car of this size is not easily hid or obscured even by darkness and rain. The jury found that the reason he failed to see the train was because he failed to keep a proper lookout. Plaintiff says he looked but did not see.

It has been held that one may not claim the right to recover because he has looked and did not see, if the conditions are such that had he looked he must have seen. Lackey v. Gulf, C. & S. F. Ry. Co., (Tex. Civ.App.) 225 S.W.2d 630.

In Gulf, C. & S. F. Ry. Co. v. Gaddis, (Tex.Com.App.) 208 S.W. 895, 896, the court said:

" * * * It is well settled in this state that one who crosses a railroad track must, as a matter of law, exercise some degree of care for his own safety.

"All men in possession of their faculties are charged with knowledge that a railroad track is a dangerous place, and the law will not permit them to go upon the track, even at a public highway, without being charged with a recognition of the danger attending such action and the use of such care as ordinary prudence would dictate in so doing. Where no care whatever has been exercised, our courts uniformly hold that contributory negligence exists as a matter of law, and recovery is denied. * * * "

The general rule is that the negligent conduct on the part of the person injured will be held to be a proximate cause of his injury when, but for this negligence, the injury would not have been inflicted, and the injury ought reasonably to have been anticipated as a consequence of the negligence, in the light of attending circumstances. 40 Tex.Jur.2d, Sec. 109, page 619.

It appears to us that the evidence as outlined above conclusively shows that reasonable minds could not arrive at a different conclusion other than that the failure of the plaintiff to keep a proper lookout was a proximate cause of the accident and resulting injury. He had crossed the track many times and was thoroughly familiar with the crossing. The crossing was practically level so that the lights on the plaintiff's automobile would have shown against the gondola car. We think that had plaintiff kept such a lookout as would have been kept by a person of ordinary prudence under the same or similar circumstances, he would have detected the presence of the train in time to have avoided the collision. As we view the evidence, plaintiff's failure to keep a proper lookout was a proximate cause of his injuries as a matter of law. Texas Mexican Ry. Co. v. Hoy, (Tex.Com.App.) 24 S.W.2d 18; Texas & N. O. R. Co. v. Stratton, (Tex.Civ.App.) 74 S.W.2d 741; Wichita Valley Ry. Co. v. Fite, supra; Kypfer v. Texas & P. Ry. Co., (Tex.Civ.App.) 88 S.W.2d 528; Cross v. Wichita Falls & S. R. Co., (Tex.Civ.App.) 140 S.W.2d 567; Lackey v. Gulf, C. & S. F. Ry. Co., supra; Texas & N. O. R. Co. v. Stewart, supra; Karr v. Panhandle & Santa Fe Ry. Co., 153 Tex. 25, 262 S.W. 2d 925; Cave v. Texas & Pacific Railway Company, supra; Missouri-Kansas-Texas Railroad Company v. Wagner, (Tex.Civ. App.) 400 S.W.2d 357; 84 A.L.R.2d 813, 873.

It is a well settled principle of law that a plaintiff who is contributorily negligent may not recover damages where his own act of negligence is found to be a proximate cause of his injury. Under the law of this state, contributory negligence is an absolute defense, no matter how negligent the defendant may have been. McFall v. Fletcher, 138 Tex. 93, 157 S.W.2d 131; 40 Tex.Jur.2d, Sec. 97, pp. 602, 603.

In view of the foregoing conclusions, we find it unnecessary to discuss the other questions presented by the defendant. We

think the trial court should have disregarded the finding made by the jury that the plaintiff's injury was not proximately caused by his failure to keep a proper lookout and that after having disregarded such finding should have granted defendant's motion for judgment notwithstanding the verdict.

For the reasons stated, the judgment of the trial court must be reversed and judgment rendered denying plaintiff recovery.

Reversed and rendered.