**Lilly FITCH, Individually, and as Next Friend of Donna Diane Fitch, et al., Plaintiffs-Appellees,**

v.

**MISSOURI–KANSAS–TEXAS TRANS-PORTATION COMPANY, d/b/a M–K–T Railroad. Defendant-Appellant.**

No. 29749.

United States Court of Appeals,
Fifth Circuit.

April 7, 1971.

Ralph Elliott, Elliott & Nall, Sherman, Tex., W. A. Thie, Dallas, Tex., for defendant-appellant.

Jack G. Kennedy, John D. Hill, Brown, Kennedy, Hill & Minshew, Sherman, Tex., for plaintiffs-appellees.

Before WISDOM, THORNBERRY and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

On a dark, misty January night in 1968, an automobile carrying a trio of motorists crashed into the lead gondola car of a Missouri-Kansas-Texas Transportation Company (M-K-T) train at an intersection in Denison, Texas. One of the car's occupants, William Edward Fitch, was killed instantly. Subsequently his wife, Lilly Fitch, individually and as next friend of the couple's four minor daughters, instituted an action against M-K-T under the Texas Death and Survival Statutes for damages for the death of her husband. From a judgment for plaintiffs in the sum of $95,000, M-K-T appeals. We remand the cause for a new trial because of error in the court's charge.

This appeal by M-K-T raises twelve points. In essence appellant contends that the trial court erroneously denied its motions for instructed verdict and for judgment notwithstanding the verdict; that the court's charge to the jury was erroneous in several respects; and that the court erred in refusing to reduce the allegedly "grossly excessive" award of damages. Since we find error in the court's charge serious enough to necessi-

tate a new trial, we do not reach appellant's other points.

Because the concept is central to the matter before us, we begin consideration of this case by capsuling the Texas law with respect to the duty owed by a railroad to motorists approaching one of its crossings. Though every railroad crossing is tinged with danger, the common law and statutory duty of a railroad in Texas with respect to an *ordinary* crossing is simply to provide and maintain thereat one crossing sign " * * * with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars." TEX.REV.CIV.STAT.ANN. art. 6370 (1926); Karr v. Panhandle & S. F. Ry., 153 Tex. 25, 262 S.W.2d 925 (1953); Muniz v. Panhandle & S. F. Ry., 285 S.W.2d 809 (Tex.Civ.App.—Amarillo 1955, writ ref'd n. r. e.). With respect to an "extra hazardous" crossing, however, it is incumbent upon a railroad company to provide extraordinary means such as lights or signal bells to warn persons approaching its crossing or intersection. *See, e. g.,* Fort Worth & D. Ry. Co. v. Williams, 375 S.W.2d 279 (1964); Texas & N. O. Ry. v. Compton, 136 S.W.2d 1113 (1940); Muniz v. Panhandle & S. F. Ry., *supra*; Lundberg v. Missouri-K-T Ry., 232 S.W.2d 879 (Tex. Civ.App.—Waco 1950, writ ref'd n. r. e.); St. Louis Southwestern Ry. v. Barr, 148 S.W.2d 924 (Tex.Civ.App.—Dallas 1940, writ dism'd jdgmt. cor.); Thompson v. St. Louis Southwestern Ry., 55 S.W.2d 1084 (Tex.Civ.App.—Texarkana 1932, no writ). A railroad crossing is characterized as extrahazardous under Texas law when it is so perilous that prudent persons, in the exercise of ordinary care, cannot use it with safety in the absence of extraordinary warning devices. *See, e. g.,* Texas & N. O. Ry. v. Compton, *supra*; Muniz v. Panhandle & S. F. Ry., *supra*. Since the degree of danger associated with a crossing is not constant but varies with the concurrent circumstances, "[w]hether or not any given set of facts describing the sur-

roundings of any particular crossing are such as to mark such crossing as one attended with unusual danger or extraordinary hazard is a question solely for the determination of the jury, unless only one conclusion could be drawn therefrom by all reasonable minds." Fort Worth & D. Ry. v. Williams, *supra*, 375 S.W.2d at 283; Missouri-K-T Ry. v. Wagner, 400 S.W.2d 357, 360 (Tex.Civ. App.—Waco 1966, writ ref'd n. r. e.)

In the instant matter a substantial portion of appellees' case was founded on the theory that the intersection at which the accident occurred was an extrahazardous one and that M-K-T was thus negligent in failing to equip the crossing and the approaching train with extraordinary warning devices. The evidence adduced at trial regarding the physical conditions associated with the crossing at the time of the accident was clearly sufficient to raise the question of extrahazardous crossing. Consequently, the trial judge submitted the issue to the jury. After defining, *inter alia,* the term extrahazardous crossing, the judge stated, "Plaintiffs allege that the conduct of the defendant, at the time and place in question, was negligent in the following particulars: * * * (7) In failing to place an adequate light to warn approaching traffic of the presence of the train at or upon the crossing in question; (8) In failing to give visible signal sufficient to warn approaching traffic that the train in question was about to occupy the crossing in question; (9) In failing to place an adequate light on the end of the leading gondola car in question; * * * (11) In that the crossing was an extrahazardous crossing at the time

and place in question." [1] Toward the end of its charge the court stated, "The issues to be determined by the jury in this case are these: First: Was the defendant railroad guilty of any negligence *in any of the particulars alleged by plaintiffs?* (emphasis added); * * * Second: Was the negligence, if any, of the defendant railroad a proximate cause of the collision in question?; * * * Third: Was William Edward Fitch, the decedent, guilty of any contributory negligence?; * * * Fourth; Were the deceased and the driver of the automobile in which he was riding at the time of the collision in question engaged in a joint enterprise?; * * * Fifth: Was the driver of the automobile in which the deceased, William Edward Fitch, was riding at the time of the collision in question guilty of any negligence which proximately caused such collision?" The jury returned the following verdict: "We, the jury, find for the Plaintiffs and against the Defendant, and assess damages in the sum of $95,-000.00."

Faithfully following the court's instruction, the jury would first have considered whether any of the eleven "particulars" alleged by plaintiff constituted negligence. Each of the eleven would seem, on the face of the charge, to constitute an independent ground of negligence and a basis for recovery by plaintiffs. Consequently a jury, by finding, for example, that M-K-T was negligent "in failing to place an adequate light on the end of the leading gondola car in question," would have found it unnecessary to consider the merits of the other ten alleged aspects of negligence. In

---

1. The other alleged aspects of negligence are as follows:

(1) In failing to keep a proper lookout for automobile vehicles approaching and attempting to cross on said crossing; (2) In failing to signal the engineer of such train to stop when vehicular traffic began to approach such crossing; (3) In failing timely to signal the engineer of such train to stop when it became apparent that the approaching vehicles were not going to stop prior to reaching such crossing; (4) In failing to sound the whistle on the locomotive at a point contemplated by Article 6371 of the revised Civil Statutes of Texas and prior to crossing such crossing; (5) In failing to ring the bell on said locomotive prior to crossing the crossing in question; (6) In failing to continue giving an audible signal as such unlighted train was being backed across the crossing in question; * * * (10) In signaling the train in question to back across the crossing before determining that such movement could be made with safety; * * *."

**4**

reality, however, three of the "particulars" concern M-K-T's failure to equip the crossing and train with extraordinary warning devices. It is apparent from the summary of Texas law with which we began this discussion that a finding that M-K-T failed to provide extraordinary warning precautions is simply without legal consequence in the absence of a specific finding that the crossing in question was an extrahazardous one. The relationship between an extrahazardous crossing and the attendant duty to employ extraordinary means to give warning is central to a proper determination of the instant case. Yet we search the charge in vain for an indication that the relationship was explained to the jury. We are left, after scrutinizing the charge in its entirety,[2] with the firm conviction that the jury was confused and misled with respect to the issue of extrahazardous crossing. A new trial is required.

Remanded.

---

2. In determining the propriety of a charge we are required to view it as a whole; "[p]ortions of a charge are not to be scrutinized on appeal apart from their context as isolated verbal phenomena." McGuire v. Davis, 5th Cir. 1971, 437 F. 2d 570; Lyle v. R. N. Adams Construction Co., 5th Cir. 1968, 402 F.2d 323, 327; Goodyear Fabric Corp. v. Hirss, 1st Cir. 1948, 169 F.2d 115, 117. See Delancey v. Motichek Towing Service, Inc., 5th Cir. 1970, 427 F.2d 897; Bankers Life & Cas. Co. v. Goodall, 5th Cir. 1966, 368 F.2d 918; Forester v. Texas & P. Ry., 5th Cir. 1964, 338 F.2d 970, certiorari denied 381 U.S. 944, 85 S.Ct. 1785, 14 L.Ed.2d 708.