**SOUTHERN PACIFIC COMPANY,**
Appellant,

v.

**Myrna Laverne EADES et al., Appellees.**

**No. 26057.**

United States Court of Appeals,
Fifth Circuit.

Aug. 26, 1971.

**12**

O. J. Weber, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for appellant.

Ward Stephenson, Orange, Tex., Gilbert I. Low, Beaumont, Tex., Stephenson, Thompson & Morris, Orange, Tex., for appellees; John Cash Smith, Orange, Tex., of counsel.

Before GEWIN, AINSWORTH and ALDISERT,* Circuit Judges.

GEWIN, Circuit Judge:

■ This wrongful death diversity action grows out of a fatal railroad crossing collision that occurred on April 14, 1966, in Orange County, Texas. Appellees[1] obtained a jury verdict on special issues for the total sum of $29,500 against appellant Southern Pacific Company for the wrongful death of the decedent, Jimmie Lee Eades. Because of discrepancies and inconsistencies in the jury's answers to special issues as submitted by the trial court, we must reverse and remand for a new trial.[2]

---

\* Of the Third Circuit, sitting by designation.

1. The appellees are (1) the Statutory beneficiaries under the Texas Wrongful Death Statute, Article 4671, Vernon's Rev.Civ. Statutes of Texas, (2) the decedent's employer who recovered property damages only, and (3) the intervening workmen's compensation insurance carrier, Hartford Accident & Indemnity Company.

2. A decision was rendered in this case on November 4, 1969. That decision was withdrawn before it became final, and the case was set for reargument in light of Christy v. Blades, 448 S.W.2d 107 (Tex.1969), a recent decision by the Texas Supreme Court thought to have significant bearing on this case. On analysis, we have concluded that *Christy* is in-

apposite to this case in its present posture. That case discusses the circumstances in which it is proper to instruct the jury as to the availability of the doctrine of impossibility of compliance with Vernon's Revised Civil Statutes of Texas, Art. 6701d, §§ 86(a) and (d) as a defense to a charge of contributory negligence by virtue of a violation of that statute. It is therefore of no relevance to appellant's attack upon the jury's finding that the decedent's contributory negligence did not proximately cause his death. Nor may the appellees avail themselves of *Christy* on this appeal to assert impossibility as an excuse for decedent's contributory negligence; under both Texas law and applicable federal procedure, appellees failed to meet their burden of requesting a charge on the issue. Christy v. Blades,

■ The collision occurred on the southern fringe of the city limits of Orange, Texas, at the point where Texas Highway 87 crosses the Southern Pacific railroad tracks.[3] The tracks run east-west and are crossed at approximately a 45° angle by the highway, which runs northeast-southwest. To the west of the crossing the tracks follow a straight, unobstructed path for three quarters of a mile. Parallel to the tracks runs West South Street (South Street); it crosses Highway 87 about 50 feet north of the tracks. Since South Street is at a lower elevation than the highway, there is a moderately steep incline at the shoulder of Highway 87 where it is joined by South Street. The intersection of the railroad and highway 87 is marked by electric flasher type signals located on each side of the tracks; they are set to begin flashing when a train passes a point 1400 feet from the crossing. On the north side of the tracks, the signal is situated between South Street and the railroad on the west side of the highway, near the vertex of the sharp angle formed by the intersection of South Street and the highway; it faces northeast towards the oncoming traffic on Highway 87. Although the evidence is in conflict on this point, there is substantial evidence tending to show that the signal can be clearly seen only by traffic approaching on Highway 87.[4] It could fairly be concluded as a matter of fact that a driver approaching the intersection from the west on South Street to turn onto Highway 87 and cross the tracks would be able to see only the unilluminated backside of the signal until the signal had passed into an uncomfortable line of vision to the rear over the driver's right shoulder.[5]

Several eyewitnesses saw the accident, and their accounts are sufficiently con-

---

448 S.W.2d 107 (Tex.1969); Fed.R.Civ. P. 49(a), 51.

To avoid confusion on remand, we emphasize that the previously withdrawn opinion is of no precedential value. In it, we alluded to a need in this case for a special issue on the *impossibility* issue. With a view towards retrial, we caution that in this regard the previous opinion suggests a procedure which might be changed in view of Yarborough v. Berner, 467 S.W.2d 188 (Tex.1971). That case abolishes the established Texas procedure of submitting separate special issues on unavoidable accident and sudden emergency. It may well be that the rationale of streamlining the *special issues system* would suggest similar treatment of the impossibility issue.

3. Attached as Appendix A is a substantial reproduction of a diagram (Defendant's exhibit No. 12) showing certain conditions in the vicinity of the situs of the crossing accident here involved.

4. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969). For this reason, appellant's reliance on Southern Pacific Co. v. Matthews, 335 F.2d 924 (5th Cir. 1964) is misplaced. In that case the court found that the evidence that the train was visible to the decedent was so conclusive that the jury should not have concluded otherwise:

The evidence was such as admits of no conclusion but that the approaching railway cars would have been plainly visi-

ble, prior to and at the time they were in hazardous proximity to the crossing, to a reasonably prudent man exercising ordinary care for his own safety.

335 F.2d at 927.

In those circumstances it was appropriate for the court to reverse a verdict for the plaintiff and instruct that a judgment notwithstanding the verdict be entered in favor of the defendant because the plaintiff had violated Article 6701d, § 86(d) and was guilty of contributory negligence as a matter of law. For reasons that are set out in this opinion, we cannot conclude that the decedent in the instant case was similarly guilty of contributory negligence as a matter of law.

5. This unusual situation could occur, even though there are no physical obstructions to the driver's view of the signal apparatus, because of the peculiar location and orientation of the signal. It is set slightly behind and to the inside of the center of an arc formed by the path of a vehicle turning towards the tracks. As the driver begins his turn, he has already passed the signal so that it is visible over his right shoulder; as he turns, it remains in the same relative position and it never comes within a comfortable line of sight. We arrived at this view of the evidence after examination of the entire record, particularly the charts, pictures, sketches, and maps of the scene and the testimony of eyewitnesses to the accident. This evidence is, we conclude, suf-

sistent to allow us to formulate a reasonably accurate reconstruction. Driving on South Street in a flat bed truck equipped with a dumpster rig and laden with a large metal container that covered the entire width of his truck, the decedent approached the Highway 87 intersection from the west. Behind him was a large trailer truck. Appellant's 637 foot train likewise approached Highway 87 from the west at a speed conceded by appellant to be at least 45 miles per hour, 30 miles per hour in excess of the City of Orange's speed limit. The testimony showed that the decedent's truck stopped, or almost stopped, at Highway 87 and turned to the driver's right, in a southwesterly direction, in front of two or three cars that were stopped on the highway headed in the same direction; it then proceeded at a slow rate of speed towards the crossing. There is testimony that the engineer blew the train's whistle and applied the emergency brakes, but there is a serious conflict in the evidence as to when the whistle was blown and the brakes applied.[6] Decedent reached the tracks and veered his truck sharply to his right (west) towards the oncoming train. The collision occurred a few feet west of the crossing, killing Eades. The train came to a halt at least 1600 feet from the point of impact.

The jury's verdict may be summarized as follows: the railroad was found guilty of three separate acts of negligence, each of which was found to have been a proximate cause of the collision; the decedent was found contributorily negligent in several respects, but none of these acts was found by the jury to have proximately caused the collision. The railroad's specific acts of negligence were: failure to give adequate warning; operation of the train at excessive speed; and violation of the City of Orange's 15 mile per hour speed limit ordinance. The decedent, on the other hand, was found negligent because he failed to keep a proper lookout, failed to have his vehicle under proper control, and failed to comply with Vernon's Revised Civil Statutes of Texas, Art. 6701d, §§ 86(a) and (d). Appellant does not seriously contest the propriety of the findings related to its own negligence. It asserts vigorously that the Jury's findings that the decedent negligently failed to stop require our conclusion, as a matter of law, that the decedent proximately caused the collision and that the appellees are thus barred by his negligence from recovery.[7] We find ourselves unable to approve the contentions of either party, and consider it necessary to remand the case for retrial.

In phrasing its special issues[8] and charge to the jury on contributory negligence, the trial court followed the language of Article 6701d §§ 86(a) and (d), which provide:

> 86. Whenever any person driving a vehicle approaches a railroad

---

ficient to raise a jury question of whether the signal was clearly visible to the decedent.

6. We find no reliable testimony as to these facts. The engineer testified that he blew his whistle as he passed the whistle board, 1800 feet from the crossing. The jury apparently disbelieved him, as is evidenced by its finding that the train failed to give adequate warning of its approach. He also testified that the train was about 140′–150′ from the crossing when he first saw the truck on South Street and that the train was 90′–100′ from the crossing when the truck began its turn. The credibility of this testimony is doubtful. At the train's admitted speed of 45 m. p. h., there would be only a scant 1.5 seconds for the truck to round the corner and reach the crossing while the train traversed the hundred foot distance.

7. Appellant does not seriously dispute the jury's finding that no proximate cause arose from the decedent's improper lookout or improper control. In view of the dispute over whether the train and signal were visible to the decedent, such a position would be fruitless unless, contrary to our conclusion here, the train or signal was visible to the decedent as a matter of law. If decedent could not reasonably see the train, or signal, improper lookout and control would not foreseeably result in a collision.

8. The relevant issues were phrased and answered as follows:
2. Do you find from a preponderance of the evidence that the deceased, Jim-

grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

(a) a *clearly visible* electric or mechanical signal gives warning of the immediate approach of a train;

\*   \*   \*   \*   \*   \*

(d) an approaching train is *plainly visible* and is in hazardous proximity to such crossing. (emphasis added)

In our analysis of this case, it is of critical importance to determine whether the approaching train, the signal, or both, were "visible" to the decedent within the meaning of Article 6701d, Section 86.[9] The Texas Supreme Court, in the landmark case of Missouri-Kansas-Texas R. Co. v. McFerrin,[10] plainly

established that the term "plainly visible" as used in subsection (d) is to be interpreted as an "objective common-law test of the reasonably prudent man":

It seems to us that in determining whether the fact situation is such as to call the statutory duty into existence, we should not hold the motorist to greater wisdom or better judgment than a reasonably prudent person, similarly situated, would exercise. Accordingly, we apply the objective common-law test of the reasonably prudent man and hold that before it can be said in a given case that an approaching train was "plainly visible" as a matter of law, it must appear, as a matter of law, that *a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it.* (emphasis added)

We must conclude that the Texas Supreme Court would adopt a similar con-

---

mie L. Eades, Jr., at the time and on the occasion in question was negligent,

\*   \*   \*   \*   \*

(c) in failing to bring his vehicle to a stop within fifty (50) feet, but not less than fifteen (15) feet from the nearest rail of such railroad when a clearly visible electric or mechanical signal gives warning of the immediate approach of a train?

Answer "Yes" or "No"     Yes

If you have answered the foregoing question "Yes", then answer,

Was such failure to stop on the part of the deceased a proximate cause of the accident in question?

Answer "Yes" or "No"     No

(d) in failing to stop within fifty (50) feet, but not less than fifteen (15) feet from the nearest rail of such railroad when the approaching train was plainly visible and in hazardous proximity to said crossing?

Answer "Yes" or "No"     Yes

If you have answered the foregoing question "Yes", then answer,

Was such failure to stop on the part of the deceased a proximate cause of the accident in question?

Answer "Yes" or "No"     No.

9. Indeed this factual issue is the center of the dispute before us. Appellant argues that since the jury at least indirectly found that the signal and train

were sufficiently visible to the decedent there is no basis in fact for the finding that his failure to stop was not a proximate cause of the collision. Appellees counter by asserting that the train did not become visible in time for the deceased to react and stop, and that it was thus impossible for him to foresee the collision. Additionally, appellees defend by disputing appellant's interpretation of the impact of the phrases "clearly visible" and "plainly visible" in the charge. Although the force of this attack on and defense of the integrity of the findings of contributory negligence is somewhat misdirected, the parties have certainly raised the visibility of the train and of the signal as issues before this court.

Because our holding is that the court's charge on the negligence issue was inadequate and the jury's findings are consequently without readily discernible meaning, we are not presented with the issues raised by the railroad's contention that an unexcused violation of Article 6701d, § 86(a) or (d) in all cases constitutes a proximate cause as a matter of law. Texas & P. Ry. v. Midkiff, 276 S.W.2d 841, 845 (Tex.Civ.App.1955) ; cf. Missouri P. Ry. v. Dean, 417 S.W.2d 357, 362 (Tex. Civ.App.1967) ; McBeth v. Texas & P. Ry., 414 S.W.2d 45 (Tex.Civ.App.1967).

10. 156 Tex. 69, 291 S.W.2d 931, 936 (1956).

struction of the words "clearly visible" in section 86(a). So construed, *McFerrin* requires that these statutes be applied in such manner that their unexcused violation is negligence per se.

The transposition of this and other common law rules of conduct into statutory rules makes their violation, if unexcused negligence per se * * *.[11]

The trial court did in fact give a seemingly correct instruction to the effect that a statutory violation is negligence as a matter of law.[12] It did not, however, apprise the jury of *McFerrin's* "objective common-law test of the reasonably prudent man."[13] Accordingly, it is impossible for us to discover the vantage point from which the jury considered the visibility of the train and of the signal in deciding whether the decedent had acted in violation of Article 6701d.[14] Without clarifying instructions, affirmative answers to the issues as given might well ascribe culpability to the decedent for conduct for which, as a matter of law, he should not have been held responsible.

Of course, a finding that such conduct was a proximate cause of the collision would not be grounds for us to render a decision finally excusing the railroad from liability, unless we could also conclude, as a matter of law, that the conduct was negligent in the *McFerrin* sense. This we cannot do. We have previously shown that there was substantial evidence presented at trial to support a jury's conclusion that Eades, as an ordinary prudent man, could not reasonably have been expected to see a signal pointing away from him, whether flashing or not,[15] as he negotiated his 22′ truck across the traffic on Highway 87, up a sharp incline, and around a difficult turn. We do not think the signal was clearly visible as a matter of law.[16] We likewise decline to hold that the train, approaching the crossing from the

11. Id. at 939. See also Calvert, Special Issues Under Article 6701d, Section 86(d) of the Texas Civil Statutes, 34 Texas L. Rev. 971 (1956); Williams v. Jackson, 436 S.W.2d 956 (Tex.Civ.App.1969); Nash v. Roden, 415 S.W.2d 251 (Tex. Civ.App.1967).

12. That instruction is as follows:
Now, if these facts do not exist, these elements, that is, a clearly visible electrical signal operating properly, or if the approaching train was not plainly visible or in hazardous proximity, then the defendant would not get the benefit of this statutory provision. On the other hand, if the facts do exist, and you so find them from a preponderance of the evidence, then you would find negligence on the part of the deceased and determine whether or not such negligence was a proximate cause.

13. Our search of the court's charge reveals only an isolated, obscure, and indirect reference to the *McFerrin rule*. That reference, quoted in its entirety, is as follows:
The Court would instruct you that the law requires the operator of a motor vehicle to stop within fifty feet but not less than fifteen feet where there is a clearly visible electric or mechanical signal operating properly and where there is an approaching train which is plainly visible *to a party operating*

*the vehicle* and in hazardous proximity of said crossing. (emphasis added)
This reference is plainly insufficient to instruct the jury on the more elaborate rule in McFerrin. See notes 10, 11 supra and accompanying text.

14. Cf. Texas & P. Ry. Co. v. Midkiff, 275 S.W.2d 841 (Tex.Civ.App.1955) which held that an affirmative answer to the following special issue was meaningless in determining whether a violation of Article 6701d, § 86(c) had occurred:
Do you find * * * that A. R. Midkiff failed to stop * * * when there was an approaching engine * * * emitting a signal warning * * *, if it was, and such engine * * * constituted an immediate hazard or danger to A. R. Midkiff? 275 S.W.2d at 845.

15. See note 18 infra.

16. Vernon's Revised Civil Statutes of Texas, Article 6701d, § 86(a); see, e. g., Texas & P. Ry. v. Midkiff, 275 S.W.2d 841, 845 (Tex.Civ.App.1955); cf. Missouri P. Ry. v. Dean, 417 S.W.2d 357, 362 (Tex.Civ.App.1967); McBeth v. Texas & P. Ry., 414 S.W.2d 45 (Tex.Civ. App.1967).
In *McBeth*, the court found that a violation of the statute was a proximate cause as a matter of law because:
[T]here is nothing to explain the fail-

rear, was "plainly visible" to him in his loaded truck.[17]

The same ambiguity in the jury's charge and verdict renders us unable to affirm the case on the record before us.[18] If, as the jury might have intended to find by its affirmative answers to special issues 2(c) and 2(d),[19] Eades in fact saw or should have seen the train or the signal, we would be required to hold as a matter of law, that he proximately caused the collision by his negligence. Accordingly we must conclude that the jury's verdict does not reflect an adequate resolution of this important factual issue.[20] In similar circumstances, in Fitch v. MKT Transportation Co.,[21] involving a railroad crossing accident case which also took place in Texas, this court reversed a judgment for the plaintiff and remanded the case for new trial. Our reasoning was that the trial court's failure to charge the jury correctly on an issue "confused and misled [the jury] with respect to the issue * * *" and rendered its verdict "simply without legal consequence."[22]

Since we are in a position neither to affirm nor to reverse and render, the case is reversed and remanded to the district court for a new trial.

Reversed and remanded.

---

ure to see the signal or thereafter to prevent McBeth from turning his head or eyes to either direction to determine what was on the track.
414 S.W.2d at 52.

17. Vernon's Revised Civil Statutes of Texas, Art. 6701d, § 86(d) ; Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956).

In *McFerrin* the court said:
We cannot hold, as a matter of law, that a train is "plainly visible" within the meaning of the statute, if an approaching motorist has no warning of the approach of the train and must look to his rear in order to discover its presence.
291 S.W.2d at 940.

18. We note in passing that under the facts before us it might have been appropriate to instruct the jury further that under *McFerrin's* objective standard the signal must have been clearly visible to him at a relevant time. The evidence indicates that because of the train's excessive speed the signals flashed, at most, for 21 seconds before the train traveled the 1400 feet from the flasher activating switch to the crossing. It is not inconceivable under the record facts that the decedent came to a stop or near stop at Highway 87, observed a non-functioning signal, and immediately proceeded at a snail's pace around the difficult corner towards the crossing. If he took as many as 21 seconds to execute this maneuver he could arrive at the crossing simultaneously with the train without violating Article 6701d, § 86(a) ; a jury could conclude that a reasonably prudent man, having looked at an inactive signal would not be acting negligently in assuming that he was safe in proceeding towards the crossing. Cf. Castille- ja v. Southern P. Ry. Co., 445 F.2d 183 (5th Cir. 1971) in which this court deemed an 18.1 second interval "a very brief interval for observation and protective action by a driver approaching the crossing on the road involved here." 445 F.2d at 187 note 3.

Additionally, we note that a jury which had not been given a proper definition of the term "clearly visible" might justifiably arrive at a finding of negligence but no proximate cause by reasoning that the decedent technically violated the statute by not stopping but should not have foreseen the collision because the signal was not flashing when he looked.

19. *See* note 8 supra.

20. *See* note 14 supra.

21. 441 F.2d 1 (5th Cir. 1971).

22. Id. at 4. The court there found the trial court's charge inadequate on "the relationship between an extra hazardous crossing and the attendant duty to employ extraordinary means to give warning." In pertinent part, Judge Thornberry wrote:
It is apparent from the summary of Texas law with which we began this discussion that a finding that M-K-T failed to provide ordinary warning precautions is simply without legal consequence in the absence of a finding that the specific crossing in question was an extrahazardous one. * * * [W]e search in vain for an indication that the relationship was explained to the jury. We are left, after scrutinizing the charge in it entirety, with the firm conviction that the jury was confused and misled with respect to the issue of extrahazardous crossing. A new trial is required.

[A4407]

AINSWORTH, Circuit Judge (dissenting):

I agree that the jury's verdict for plaintiffs should be reversed, but with proper deference to the thorough and comprehensive opinion of the Court herein, I disagree that this case should be remanded for a new trial. I would reverse and render in favor of defendant.

This grade crossing accident between a railroad passenger train and truck, occurred in the early afternoon of a clear April day at a point in the outlying area of Orange, Texas, where Texas Highway 87 crosses the main line of the Southern Pacific Railroad Company in its Houston-New Orleans Division. It is undisputed that the crossing is open and unobstructed. The truck had proceeded easterly for some distance along South Street, which is parallel with and 50 feet north of the rail line. The train was also moving east. The fireman who was on the left side of the locomotive first observed the truck proceeding east on South Street at a point about 1,200 or 1,300 feet west of the crossing. When the truck driver reached Highway 87 he stopped and then turned to his right ahead of three vehicles which were stopped and waiting the train's passage. On the other side of the tracks vehicles were also stopped, waiting for the train to pass. The driver then proceeded slowly up to the rail crossing and inexplicably started across directly in the path of the oncoming train which struck him. He was familiar with this intersection of rail line and highway, having crossed it many times. Whether he saw or could have seen the flasher signal light at the crossing, or heard the train whistle and bell, we do not know though there is no reason apparent why he could not. Nor is the answer necessary to our decision for it is obvious that there was *nothing* to prevent his seeing the noisy, 637-foot approaching train. *He should have looked before he crossed.* If he did look and nevertheless crossed, he was similarly at fault. Under either alternative, he was guilty of substantial

contributory negligence, which under Texas law barred recovery. See McFall v. Fletcher, 138 Tex. 93, 157 S.W.2d 131, 133 (1941).

In answer to the special interrogatories, the jury found the truck driver was negligent in failing to keep a proper lookout for his own safety, in failing to keep his vehicle under proper control, in failing to bring his vehicle to a stop within 50 feet but not less than 15 feet from the nearest rail of the railroad when a clearly visible electrical or mechanical signal was giving warning of the immediate approach of the train, and in failing to stop within 50 feet but not less than 15 feet from the nearest rail of the railroad when the approaching train was plainly visible and in hazardous proximity to the crossing. They could hardly have decided otherwise. Curiously, however, the jury also answered special interrogatories to the effect that the driver's negligence was not a proximate cause of the accident. Here the jury clearly erred and in a manner that reasonable men should not have differed, for reasonable men should have agreed, under the compelling facts and circumstances of this case, and as a matter of law, that the driver's negligence was a proximate cause of the accident. See Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365. "Proximate cause exists as a matter of law where the circumstances are such that reasonable minds could not arrive at a different conclusion." Missouri Pacific Railroad Company v. Dean, 417 S.W.2d 357, 359 (Tex.Civ.App.1967). The Texas rule is "that the negligent conduct on the part of the person injured will be held to be a proximate cause of his injury when, but for this negligence, the injury would not have been inflicted, and the injury ought reasonably to have been anticipated as a consequence of the negligence, in the light of attending circumstances." Missouri Pacific Railroad Company v. Dean, 417 S.W.2d 357, 362 (Tex.Civ.App.1967). Applying that principle I am left with no doubt that the deceased driver's con-

tributory negligence was a proximate cause of the accident. I am in firm disagreement with the majority which declines to hold that the approaching train was not "plainly visible" to the truck driver. The record is strongly to the contrary. Nothing prevented his seeing the train. It was in as plain view as anything can be plain. The crossing was in no way an extra hazardous or special circumstances crossing.

Thus it became the duty of the trial judge to examine the peculiar facts and circumstances here, and in due course to grant the defendant's motion for judgment notwithstanding the verdict. See Southern Pacific Company v. Matthews, 5 Cir., 1964, 335 F.2d 924. Therefore, I cannot join in the majority opinion insofar as it remands this case for a new trial.