Arthur WALKER, Plaintiff-Appellee,

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY, Defendant-Appellant.**

No. 81–2086.

United States Court of Appeals,
Fifth Circuit.

May 7, 1982.

Rehearing Denied June 10, 1982.

Gene M. Williams, Robert A. Black, Beaumont, Tex., for defendant-appellant.

Blair Bisbey, Jasper, Tex., for plaintiff-appellee.

Before BROWN, GOLDBERG and POLITZ, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Kansas City Southern Railway Company (KCS) appeals from a jury verdict awarding Arthur Walker damages as a result of a 1978 accident at a train crossing in Port Arthur, Texas. KCS argues that the magistrate's instructions to the jury misstated Texas law and that he erred in failing to grant judgment notwithstanding the verdict. We reverse.

*Car Meets Railway*

On April 28, 1978, at approximately 11:00 p. m., Arthur Walker, a resident of Port Arthur, Texas, drove his car into the side of a slow-moving or stopped KCS freight train at a point on Thomas Boulevard where

KCS' main track to Port Neches and Beaumont leaves its Port Arthur yard.

Walker was returning home from the Friendly Bar and Mama's Place, where he had consumed a number of beers over a four-hour period. As he approached the crossing, he swerved out of his lane to avoid two cars stopped in front of him and smashed into the train on the crossing.

The crossing is equipped with sets of automatic flashing lights and bells in addition to the state-mandated markings.[1] Mercury vapor street lamps illuminate the area. Thomas Boulevard is a wide four-lane street, divided by a median. At the point of the crossing it is level, and no buildings or trees obscure the view.

Walker testified that the signals were not working and that he could see the traffic lights on Houston Avenue beyond the blocked crossing.[2] He called two witnesses who said that at some time after the accident[3] the lights were not functioning. KCS presented four witnesses, including the drivers of the two cars that Walker swerved to avoid, who had seen the signals and stopped, and two KCS employees who had seen the crash from another train stopped near the crossing. All four testified that the signals were functioning before and after the collision, although, on cross-examination, none could admit with certainty that he had looked at the signal at the *exact* moment of impact. James McMillian, a KCS signal maintainer, testified that he was called out of bed the night of the accident to come check the equipment, and that his tests showed that the signals were functioning normally. Walker concedes that the signals were functioning later the night of the accident.

Results of a blood test performed on Walker by a doctor at Park Place Hospital in Port Arthur showed a blood alcohol level of .18%. We take note that .10% is the presumptive level of intoxication in the State of Texas.

By consent of the parties, trial was had before a federal magistrate. The jury returned a general verdict of $20,000 for Arthur Walker. KCS timely moved for directed verdict and for judgment notwithstanding the verdict or, alternatively, a new trial. The magistrate denied all motions. KCS also objected to the jury charge.

*We've Been Working On The Railroad*

KCS contends that the magistrate's instructions to the jury incorrectly summarized Texas law. We set forth excerpts below.[4] We believe that this charge would

---

**1.** Art. 6370, Tex.Rev.Civ.Stat.Ann., provides:

Signs at cross-roads

Such corporation shall erect at all points where its road shall cross any first or second class public road, at a sufficient elevation from such public road to admit of the free passage of vehicles of every kind, a sign with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars; and any company neglecting or refusing to erect such signs shall be liable in damages for all injuries occurring to persons or property from such neglect or refusal.

**2.** *See Fort Worth & Denver Railway Co. v. Williams*, 375 S.W.2d 279 (Tex.1964); *Texas & N. O. R. Co. v. Davis*, 210 S.W.2d 195 (Tex.Civ. App.—Beaumont 1948, writ ref'd n. r. e.)

**3.** From the witnesses' testimony, it is impossible to determine how long after the accident took place they arrived on the scene, but it seems certain that at least 5 and perhaps 10 minutes had elapsed.

**4.** In the first instance, the Plaintiff contends that the crossing in question was an extra-hazardous crossing and that the railroad failed to have an automatic signal in the nature of a light which would go on automatically as the train approached and thus apprise a motorist about to cross the railroad at such point of the approaching of the Defendant's train. Therefore, the Court would instruct you that if you find from a preponderance of the evidence that the railroad crossing in question was an extra-hazardous crossing, then the Defendant would be negligent as a matter of law and then you would give consideration to the question of whether or not such negligence was a proximate cause and, if so, then you would find in favor of the Plaintiff and against the Defendant.

\* \* \* \* \* \*

The Plaintiff further contends that the Defendant was negligent in one or more of the following particulars:

(1) In failing to maintain signal devices at the crossing in question and permitting the lights and bells at the crossing to become

have confused the jury. It invited them either (i) to hold KCS liable if the crossing was extra-hazardous, no matter what precautions it had taken, or (ii) whether or not they found the crossing extra-hazardous, to hold KCS liable if it failed in any one of three respects to mark the crossing.

Under Texas law, there can by now be no doubt as to the duty of a railroad in maintaining a crossing. In *Richards v. Southern Pacific Transportation*, 666 F.2d 99 (5th Cir. 1982), an exhaustive opinion discussing all the Texas precedent since the days of the Iron Horse, the Court concluded that in the absence of a specific finding that a crossing was extra-hazardous, a verdict for the plaintiff could not stand. The court quoted *Fitch v. Missouri-Kansas-Texas Transportation Co.*, 441 F.2d 1, 2 (5th Cir. 1971), where we pointed out:

> Though every railroad crossing is tinged with danger, the common law and statutory duty of a railroad in Texas with respect to an ordinary crossing is simply to provide and maintain thereat one crossing sign ". . . with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars." . . . With respect to an "extra hazardous" crossing, however, it is incumbent upon a railroad company to provide extraordinary means such as lights or signal bells to warn persons approaching its crossing or intersection. . . A railroad crossing is characterized as extrahazardous under Texas law when it is so perilous that prudent persons, in the exercise of ordinary care, cannot use it with safety in the absence of extraordinary warning devices. . . .

(Citations omitted). Walker does not allege that the railroad failed in its statutory duty to mark the crossing. Rather, he contends that this crossing was extra-hazardous, a condition that obligated KCS to employ extraordinary means to warn drivers of its location.

The District Court gave a general charge to the jury. We point out, as we have so often,[5] that special interrogatories under Rule 49(a), F.R.Civ.P., might have avoided any complications. Here the charge did not require the jury specifically to find that the crossing was extra-hazardous. In *Fitch, supra*, the trial court's failure to explain to the jury the relationship between an extra-hazardous crossing and the duty to employ extraordinary means to give warning necessitated a new trial. As we declared:

> It is apparent from the summary of Texas law . . . that a finding that M–K–T failed to provide extraordinary warning precautions is simply *without legal consequence in the absence of a specific finding that the crossing in question was an extrahazardous one.* The relationship between an extra-hazardous crossing and the attendant duty to employ extraordinary means to give warning is central to a proper determination of the instant case.

*Id.* at 4 (emphasis supplied).

Looking to the Texas decisions, we find support for this view in *Missouri Pacific Railroad Co. v. Cooper*, 563 S.W.2d 233, 235 (Tex.1978). There the Texas Supreme Court reversed a jury verdict for the children of two parents killed when their car collided with a train that had already

inoperable and failing to warn Arthur Walker of the train's presence;

(2) In failing to flag the crossing by use of a flagman; and

(3) In failing to flag the crossing by use of a fusee.

Therefore, the Court would instruct you that if you should find from a preponderance of the evidence that the Defendant, through its agents, servants and employees, was negligent in any one or more of the particulars as contended by the Plaintiff, and that such negligence was the proximate cause of the accident in question and the injuries sustained by the Plaintiff, you would then find for the Plaintiff and against the Defendant, unless you should find that the Plaintiff was contributorily negligent and that such was more than fifty percent of the proximate cause of the accident.

5. *See e.g., Guidry v. Kem Manufacturing*, 598 F.2d 402 (5th Cir.), *reh. denied*, 604 F.2d 320 (5th Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Jones v. Miles*, 656 F.2d 103, 106 n.3 (5th Cir. 1981).

reached the crossing. The court found that the crossing was not extra-hazardous and therefore the railroad had no greater duty than its statutory command to mark the crossing.

> Every railroad crossing is dangerous, but it is only crossings which are found to be extra hazardous that place the higher duty upon the railroad to use extraordinary means to warn travelers along the road . . . The plaintiffs . . . had to show not that the railroad crossing was dangerous; they had to show that it was extra-hazardous.

563 S.W.2d at 235. Since the jury charge in this case did not require the jury first to find that the crossing was extra-hazardous as a pre-requisite to holding the railroad liable, the verdict may not stand.

Walker urges that *Missouri Pacific Railroad Co. v. Shaw*, 620 S.W.2d 161 (Tex.Civ. App.—Corpus Christi, 1981, writ ref'd. n. r. e.), controls in this diversity suit and that its holding does not require a specific finding of an extra-hazardous crossing. While we doubt that the Court of Civil Appeals in *Shaw* could have meant to upset settled law as declared by the Texas Supreme Court in *Cooper, supra,* and in a long line of earlier cases, we believe the case is entirely distinguishable from the facts before us. In *Shaw*, the driver of a tractor-trailer in the early morning darkness approached a train crossing. He noticed the lights flashing and two trains crossing, slowed down and stopped. After the two trains had cleared the tracks, he cautiously proceeded. The caboose of one of the trains, backing up, struck the left hand side of the cab in which he was riding.

The Court declared that "[t]his case was not tried on the theory of an extra hazardous crossing", 620 S.W.2d at 165, a finding that alone would dispose of Walker's argument. Yet we point out that the negligent conduct in *Shaw* did not involve the railroad's upkeep of the crossing. No one denied that the signals worked and informed

Shaw of the presence of the two trains. Rather, the negligent conduct was the backing up of a train, in darkness, without lights, over a crossing that it already had passed, without notice to drivers in Shaw's position. That action constituted negligence on the railroad's part, at least as to Shaw. As to another driver, approaching the crossing, the result might differ, since the lights would alert him to any danger. *Shaw* we believe, is confined to its quite unusual facts and does not govern here in the face of directly applicable precedent from the Texas Supreme Court.

Taking a chapter from the *Cooper* court, we conclude not only that the court below erred in its instructions to the jury but also that it erred in not granting judgment notwithstanding the verdict for the railroad. We judge a court's failure to grant a directed verdict or judgment notwithstanding the verdict by the standards of *Boeing v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc). There the late Judge Ainsworth, in now-familiar words, held:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper.

411 F.2d at 374.

■ Having read through the entire transcript of proceedings and scrutinized the records and exhibits, we are of the firm conviction that no reasonable juror could find this crossing to be extra-hazardous. Walker, hardly a disinterested witness, testified that he saw the traffic lights of Houston Avenue over, under or through the train.[6] The record indicates that the train

---

**6.** Walker argues that the deposition testimony of Robert Chretien supports his "visual illusion" theory. We have twice read over Chretien's testimony, and the only conclusion we can draw is that the Wizard of Oz himself

had stopped or was moving very slowly, so the only plausible explanation is that Walker saw the lights through the gap between two railroad cars. That optical effect could not establish that the crossing was extra-hazardous, for it could happen at *any* crossing where *any* train passes slowly.

 Neither the fact that Thomas Boulevard is heavily traveled,[7] that it was late at night,[8] that the warning signals had malfunctioned in the past,[9] nor that the train was stopped on the crossing can constitute this crossing as extra-hazardous as a matter of law. *See Richards*, 666 F.2d at 105, and cases cited. In fact, "the presence of the train itself was a warning to ordinarily cautious drivers approaching the crossing". *Id. See also Texas & N. O. R. Co. v. Stratton*, 74 S.W.2d 741, 742–43 (Tex.Civ. App.—San Antonio 1934, writ ref'd n. r. e.). There were no obstructions to view, *Missouri-Pacific Railroad Co. v. Owen*, 306 F.2d 887 (5th Cir. 1962), and the two other drivers had seen the signals and stopped for the train. *Lundberg v. Missouri-Kansas-Texas Railroad Co.*, 232 S.W.2d 879 (Tex.Civ.App. —Waco 1950, writ ref'd. n. r. e.).

Since no reasonable juror could have found this crossing to be extra-hazardous, and such a finding is a pre-requisite for consideration of allegations of negligence in failing to employ extraordinary means to mark the crossing, the verdict of the jury may not stand. The magistrate erred in not granting KCS' motion for JNOV. We therefore reverse and render the judgment of the District Court and remand with instructions that judgment be entered that plaintiff take nothing.

### REVERSED AND RENDERED.

could not conjure up any clear meaning from this deposition.

7. *See Texas & N. O. R. Co. v. Davis, supra* (heavily traveled road not extra-hazardous under normal conditions of visibility).

8. *Missouri-Kansas-Texas Railroad Co. v. Bernhardt*, 418 S.W.2d 368, 374 (Tex.Civ.App.— Austin 1967, writ ref'd n. r. e.).

9. In *Osuna v. Southern Pacific Railroad*, 627 S.W.2d 245 (Tex.Civ.App.—Waco, 1982), the Court of Civil Appeals held that malfunctioning of a set of signals at the time of the accident did not render an otherwise safe crossing extra-hazardous.